Present: Kinser, C.J., Lemons, Goodwyn, Millette, and Mims, JJ., and Lacy and Koontz, S.JJ.

LEWIS-GALE MEDICAL CENTER, LLC

OPINION BY
v. Record No. 100457 SENIOR JUSTICE LAWRENCE L. KOONTZ, JR.
June 9, 2011
KAREN J. ALLDREDGE

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
Jonathan M. Apgar, Judge

Lewis-Gale Medical Center, LLC ("Lewis-Gale") appeals from a jury verdict awarding Dr. Karen J. Alldredge $900,000 for tortious interference with her contract of employment with Southwest Emergency Physicians, Inc. ("SWEP"). The dispositive issue we consider is whether Dr. Alldredge presented sufficient evidence to permit the jury to find that Lewis-Gale employed improper methods to induce SWEP to terminate her employment.

BACKGROUND

Lewis-Gale has assigned three errors to the circuit court's judgment approving the jury's verdict in favor of Dr. Alldredge, contending that the circuit court erred in permitting the jury to consider Dr. Alldredge's alleged emotional distress as an element of her damages, in failing to find that the jury's award of damages was excessive, and in failing to rule that Dr. Alldredge had not met her burden of proving that Lewis-Gale employed improper methods to induce SWEP to terminate Dr. Alldredge's employment and, thus, had

not proven as a matter of law that this termination was the result of a tortious interference by Lewis-Gale in her contract relationship with SWEP. Because we find the resolution of this last issue to be dispositive, we will limit our recitation of the facts established in that part of the voluminous record necessary for our resolution of this appeal. Union of Needletrades, Industrial & Textile Employees v. Jones, 268 Va. 512, 514, 603 S.E.2d 920, 921 (2004). Under familiar principles, we consider those facts in the light most favorable to Dr. Alldredge, the prevailing party in the circuit court.

SWEP and Lewis-Gale entered into a contract in 2005 under which SWEP's physician-employees exclusively staffed Lewis-Gale's Emergency Department. Dr. Alldredge, an emergency room physician, was a contract participant in SWEP from 2005 until the termination of her employment in 2008. Her contract provided for a 12-month term of employment with SWEP and included an automatic renewal provision. However, the contract further provided that it could be terminated by either party without cause subject to a 90-day written notice of the intent to do so.

In late March 2008, Alldredge attended an informal dinner with some of the emergency room nursing staff who were employees of Lewis-Gale. During the dinner, these nurses

2

discussed a letter addressed to the Lewis-Gale administration voicing certain work-related concerns. Dr. Alldredge was the only physician present. A few weeks later, Dr. Alldredge was shown the letter by one of the nurses and explained to the nurse that she did not sign the letter because it related to "a nursing issue, not a physician issue." She subsequently conceded that she did not sign this letter because she also knew that SWEP did not want its physicians involving themselves in Lewis-Gale's personnel issues.

Candi Carroll, Lewis-Gale's chief nursing officer, received a copy of the letter. Carroll subsequently became aware of Dr. Alldredge's involvement with the signatories to the letter. By email, Carroll contacted Dr. Robert E. Dowling, SWEP's president who also served as Medical Director for the Emergency Department at Lewis-Gale. Carroll informed him of her belief that Dr. Alldredge had supported the staff that had sent the letter and inquired "what the plan of [SWEP] is to deal with Doctor Alldredge." Carroll and Dr. Dowling exchanged several emails addressing Carroll's concerns. Carroll also advised her superiors of the situation.

After learning that Dr. Alldredge had attended the dinner, Charlotte Tyson, chief operating officer of Lewis-Gale, was concerned that Dr. Alldredge, as a non-employee of Lewis-Gale, had become involved in the hospital's personnel

3

matters. Tyson contacted Dr. Jeffrey M. Preuss, one of the other physicians with SWEP, and "brought to [SWEP] the fact that there was a perceived issue with Doctor Alldredge's behavior and they had asked that [SWEP] do something to take care of that issue, resolve it one way or another."

On April 29, 2008, at SWEP's request, Tyson and Carroll met with members of SWEP's executive board. During the meeting, Tyson described Dr. Alldredge's behavior as that of an "organizational terrorist," and told SWEP's executive board that when a business has someone like Dr. Alldredge, "they had to go." Although the representatives of SWEP repeatedly asked Tyson how Lewis-Gale wanted the situation addressed, Tyson maintained that she never expressly told SWEP that Lewis-Gale's administration wanted Dr. Alldredge's employment to be terminated. Nonetheless, shortly after the meeting Dr. Dowling informed Tyson in an email that he was going to recommend the termination of Dr. Alldredge's employment at a meeting of the SWEP board on May 1, 2008.

The minutes of SWEP's board meeting cite additional concerns about Dr. Alldredge's "treatment of other partners and group members" and "her behavior over the years." The board was of opinion that "the situation had come to a crisis point" and that Dr. Alldredge "was not likely to improve her behavior long-term." Nonetheless, the principal concern cited

4

by the board was that not terminating Dr. Alldredge's employment could jeopardize SWEP's contract with Lewis-Gale. Dr. Alldredge, who was present for part of the meeting, defended herself and expressed frustration and sadness at being called an "organizational terrorist."

Dr. Alldredge arranged a meeting with Tyson and Vincent Giovanetti, Lewis-Gale's chief executive officer, on May 5, 2008. SWEP suspended making a decision on whether to terminate her employment pending the outcome of this meeting. According to Dr. Preuss, SWEP did not want to terminate Dr. Alldredge's employment and would not have done so if "the outcome was favorable" in her meeting with Tyson and Giovanetti.

According to Dr. Alldredge, the purpose of the meeting with Tyson and Giovanetti was that "I was going to try and save my job, because ultimately it was hospital administration that wanted me gone," not SWEP. During the meeting, Dr. Alldredge was anxious and knew it was a "live or die" situation. After Dr. Alldredge's meeting with Tyson and Giovanetti, Dr. Preuss concluded that Lewis-Gale's "administration wanted [SWEP] to proceed with how [its executive board] had voted" to terminate Dr. Alldredge's employment.

SWEP terminated Dr. Alldredge's employment in accord with the provision of her contract by providing her with a 90-day notice period.  However, when Dr. Alldredge declined to report for her next scheduled shift at the emergency room, SWEP removed her from active employment but continued to pay her salary for the next three months.

On June 2, 2008, Dr. Alldredge filed in the Circuit Court of the City of Roanoke a complaint against Lewis-Gale alleging tortious interference with her contract of employment with SWEP.  Dr. Alldredge did not specifically allege that Lewis-Gale used "improper methods" in procuring the termination of her employment, but asserted that Lewis-Gale had used "threats" and referred to its "illegal interference."  Dr. Alldredge alleged that in addition to lost income, shareholder interest and other opportunities as a result of her employment being terminated from SWEP, she would continue to suffer from loss of "future employment and employment opportunities [and] damage to [her] professional reputation."  Dr. Alldredge sought $10,000,000 in compensatory damages.

6

Lewis-Gale filed an answer denying liability as well as a plea in bar[1] asserting that Alldredge could not maintain an action for tortious interference because she was an employee-at-will as her contract with SWEP allowed her employment to be terminated without cause. Lewis-Gale further contended that because it could likewise terminate its contract with SWEP without cause, it actions as alleged in Dr. Alldredge's complaint did not rise to the level of improper methods required for establishing a tort action for interference with an at-will contract. The circuit court rejected Lewis-Gale's argument, finding that even if the termination without cause provision of the SWEP contract made Dr. Alldredge an at-will employee, the allegations of the complaint were sufficient to support a cause of action against Lewis-Gale for using improper methods to interfere with Alldredge's rights under that contract.

Following discovery, Lewis-Gale filed a motion for summary judgment alleging that there were no disputed material

---

[1] Though styled a plea in bar, Lewis-Gale's pleading was more properly a demurrer. The asserted failure of the complaint to allege use of improper methods in the intentional interference with the at-will employment contract would not have created a jurisdictional bar to the suit, but merely would have resulted in a failure to state a viable claim. Regardless of how a pleading is styled, we review the judgment of the circuit court on that pleading under the standard appropriate to its substance. See Chesterfield County v. Stigall, 262 Va. 697, 701 n.2, 554 S.E.2d 49, 52 n.2 (2001).

7

facts and that Dr. Alldredge could not establish that Lewis-Gale acted improperly in its dealings with SWEP in seeking the termination of Dr. Alldredge's employment. Lewis-Gale conceded that Tyson's abrasive manner and intemperate language may have been "unsavory," "careless," and "harsh," but maintained that because Tyson and the other Lewis-Gale administrators were pursuing what they perceived as the best commercial interests of the hospital and were within their rights under the hospital's contract with SWEP, Alldredge could not establish that any improper method had been used to procure the termination of Dr. Alldredge's employment.

Dr. Alldredge responded to the motion for summary judgment asserting that Lewis-Gale had fabricated a pretext of "smoke and mirrors" to procure the termination of her contact with SWEP. Dr. Alldredge maintained that the response of Lewis-Gale's "all-mighty chain of command" to the employees' letter and her involvement in its drafting was "irrational and disproportionate" and led to Tyson and others threatening to cancel SWEP's contact and making defamatory statements concerning Dr. Alldredge. She contended that these allegations were in dispute and, if proven, were sufficient to establish that Lewis-Gale's actions exceeded that permissible in its commercial relations with SWEP and, thus, were improper and rendered its interference in the contract between SWEP and

8

Dr. Alldredge tortious. During a pre-trial hearing covering numerous motions, the circuit court took Lewis-Gale's motion for summary judgment under advisement.

A jury trial commenced in the circuit court on September 8, 2009. At the conclusion of Dr. Alldredge's case-in-chief following three days of testimony presented by witnesses for Dr. Alldredge during which evidence in accord with the above recited facts was adduced, Lewis-Gale moved to strike Dr. Alldredge's evidence and for summary judgment. Lewis-Gale again asserted that, because the termination of Dr. Alldredge's employment was authorized under the at-will provision of her contract with SWEP, Dr. Alldredge had not met her burden of proving that any action by Lewis-Gale that resulted in SWEP's decision to terminate Dr. Alldredge's employment was illegal, tortious, or otherwise improper.

The circuit court denied the motion to strike. In doing so the court did not expressly find what actions by Lewis-Gale could form the basis for the jury finding that the hospital's administrators had employed improper methods in procuring SWEP's termination of Dr. Alldredge's employment. Rather, the court focused on whether Lewis-Gale was aware that Dr. Alldredge had an expectancy of continued employment and whether "the members of SWEP felt pressured to respond to [Lewis-Gale's] statements and actions."

The case was submitted to the jury, which was instructed that Dr. Alldredge had the burden of proving that Lewis-Gale "use[d] improper methods to interfere with the contractual relationship or expectancy" between Dr. Alldredge and SWEP. The jury returned its verdict for Dr. Alldredge, awarding her $900,000 in compensatory damages. Lewis-Gale filed a post-trial motion to set aside the verdict, for a new trial, or remittitur. The circuit court denied this motion without further comment in a final order dated December 10, 2009 and confirmed the jury's verdict. This appeal followed.

DISCUSSION

In Chaves v. Johnson, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985), we recognized that the tort of intentional interference with performance of a contract by a third party is a permissible cause of action in Virginia. "The elements required for a prima facie showing of the tort are: (i) the existence of a valid contractual relationship or business expectancy; (ii) knowledge of the relationship or expectancy on the part of the interferor; (iii) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (iv) resultant damage to the party whose relationship or expectancy has been disrupted." DurretteBradshaw, P.C. v. MRC Consulting, L.C., 277 Va. 140,

10

145, 670 S.E.2d 704, 706 (2009) (citing Chaves, 230 Va. at 120, 335 S.E.2d at 102).

"Additionally, when a contract is terminable at will, a plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not only an intentional interference that caused the termination of the at-will contract, but also that the defendant employed improper methods." Dunn, McCormack & MacPherson v. Connolly, 281 Va. 553, 559, ___ S.E.2d ___, ___ (2011) (internal quotation marks omitted) (emphasis in original); see also Jae-Woo Cha v. Korean Presbyterian Church of Washington, 262 Va. 604, 613, 553 S.E.2d 511, 515 (2001); Perk v. Vector Resources Group, 253 Va. 310, 314, 485 S.E.2d 140, 143 (1997); Restatement (Second) of Torts § 766, cmt. g (1979). However, the plaintiff need not prove that "the 'improper methods' used were inherently illegal or tortious," but "only that the interference was intentional and improper under the circumstances" of the particular case. Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co., 254 Va. 408, 414, 493 S.E.2d 375, 379 (1997).

An employment contract is terminable at-will if the plain terms of the contract provide that the employer may terminate the contact prior to the designated period of time of the employment without being required to establish a just cause

11

for doing so. Cave Hill Corp. v. Hiers, 264 Va. 640, 646, 570 S.E.2d 790, 793 (2002). Although such a contract may place conditions of notice and timing of the termination, when the employer complies with these conditions the termination does not constitute a breach of the employment contract. Id.

In the present case, regardless of any expectancy that Dr. Alldredge may have had with regard to her continued employment by SWEP, because her contract provided for termination by SWEP after giving 90 days notice, Dr. Alldredge's contract was for employment at-will. Accordingly, Dr. Alldredge was required to prove not only that Lewis-Gale intentionally interfered with her contract relationship with SWEP, but also that in doing so Lewis-Gale employed "improper methods."

The thrust of Lewis-Gale's assertions is that when Dr. Alldredge's evidence adduced at trial is viewed in its totality, it was insufficient as a matter of law to permit the jury to find that Lewis-Gale's dealings with SWEP with regard to its employment of Dr. Alldredge constituted improper methods that would sustain her cause of action for interference with her at-will employment contract. Thus, Lewis-Gale contends that the court erred in not striking her evidence and submitting the case to the jury. We agree.

12

Our recent decision in Dunn, McCormack & MacPherson reiterated the contours of what constitutes the types of "improper methods" that a third party may not undertake when it intends for those actions to result in the termination of an at-will contract between others.  Quoting from Duggin v. Adams, 234 Va. 221, 227-28, 360 S.E.2d 832, 836-37 (1987), we said:

> "Methods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules. Improper methods may include violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship. . . ."

> "Methods also may be improper because they violate an established standard of a trade or profession, or involve unethical conduct.  Sharp dealing, overreaching, or unfair competition may also constitute improper methods."

Dunn, McCormack & MacPherson, 281 Va. at 559, ___ S.E.2d at ___.  We declined, however, to expand the parameters of "improper methods" to include "actions solely motivated by spite, ill will and malice" toward the plaintiff.  Id.

Dr. Alldredge did not allege or present any evidence tending to prove that Lewis-Gale's actions were "illegal or independently tortious."  Nor was there any fiduciary duty owed to Dr. Alldredge that Lewis-Gale could have violated.

13

Dr. Alldredge did not assert that Lewis-Gale's motivation in seeking to have SWEP terminate her employment involved a desire to gain some competitive advantage, violated an established standard of the dealings between hospitals and their independent medical contractors, or involved unethical conduct in the form of sharp dealing, overreaching, or unfair competition.

Rather, Dr. Alldredge maintains that Lewis-Gale's actions were improper in that it used intimidation, duress, and undue influence based upon Lewis-Gale's ability to bring "financial ruin" on SWEP by canceling its contract to provide emergency room services to Lewis-Gale, which was SWEP's principal source of revenue. However, while the evidence supported the inference that SWEP was concerned about the continuation of its contract with Lewis-Gale, the at-will contract between Lewis-Gale and SWEP allowed termination of the contract upon due notice and without cause at any time. This status required that SWEP be continually sensitive to the possibility of termination for any reason or no reason, regardless of any specific action or comment made by Lewis-Gale officers or personnel. Thus, the inherent intimidation or duress experienced as a result of the very nature of this at-will contract cannot rise to the level of improper methods necessary to establish a cause of action for tortious

14

interference with contract expectancy.  Furthermore, in this case neither Dr. Alldredge's allegations nor her evidence demonstrated a specific threat or other action by Lewis-Gale that it was going to cancel its contract with SWEP if SWEP did not terminate Dr. Alldredge's employment.

We also reject Dr. Alldredge's allegations that Tyson's statements, such as her use of the term "organizational terrorist" to describe Dr. Alldredge, were independently tortious and therefore rose to improper methods.  These statements were certainly unwise, unprofessional hyperbole, and may even indicate a personal animus toward Dr. Alldredge. In the context of Tyson's discussions with SWEP, however, the statements did not rise to the level of fraud, misrepresentation, deceit, or defamation that could constitute improper methods of interference with the contract between Dr. Alldredge and SWEP.  Likewise, we find no significant support in the record for Dr. Alldredge's assertion that Lewis-Gale violated its contract with SWEP or its own internal personnel policies by bringing its complaints directly to SWEP's executive board.

We disagree with Dr. Alldredge that the actions of Lewis-Gale's administrators, particularly Tyson, which Lewis-Gale's counsel concedes were "unsavory," "careless," and "harsh," rose to the level of the "improper methods" required to prove

15

Lewis-Gale's actions exceeded that permissible in normal business relations in order to give rise to a cause of action in tort. In Chaves, we noted that where the defendant has its own contractual or commercial relationship with the other party to the plaintiff's contract, a balance must "be struck between the social desirability of protecting the business relationship [of the plaintiff and the other party], on one hand, and the interferor's freedom of action [with the other party] on the other." 230 Va. at 121, 335 S.E.2d at 103. In Chaves, we addressed this observation to the availability of an affirmative defense of privilege or justification, but we are of opinion that it applies with equal force to determining what the law will deem to be an improper method by the interferor when there is an existing commercial relationship between it and the other party to the contract with the plaintiff. See, e.g., Charles E. Brauer Co. v. NationsBank of Va., N.A., 251 Va. 28, 36, 466 S.E.2d 382, 387 (1996); see also Frank Brunckhorst Co. v. Coastal Atlantic, Inc., 542 F.Supp.2d 452, 464 (E.D. Va. 2008).

Under Virginia law, a threat to perform an act one is legally entitled to perform is not a wrongful act. Goode v. Burke Town Plaza, Inc., 246 Va. 407, 411, 436 S.E.2d 450, 452-53 (1993); Bond v. Crawford, 193 Va. 437, 444, 69 S.E.2d 470, 475 (1952). Thus, in Charles E. Brauer Co. we held that "the

16

lawful exercise of [defendant's] statutory and contractual rights which incidentally may have interfered with the [plaintiff's] negotiations for sale of the inventory . . . is not actionable and will not support recovery for tortious interference with contractual relations." 251 Va. at 36, 466 S.E.2d at 387.

As we have previously observed, "the law will not provide relief to every disgruntled player in the rough-and-tumble world comprising the competitive marketplace." Williams v. Dominion Tech. Partners, L.L.C., 265 Va. 280, 290, 576 S.E.2d 752, 758 (2003) (internal quotation marks omitted). The fact that Virginia recognizes the existence of the tort of intentional interference with a contract does not mean that every contract relationship which is terminated or disrupted through the interference of a third party promoting its own interests will result in tort liability for that party. Rather, the law provides a remedy in tort only where the plaintiff can prove that the third party's actions were illegal or fell so far outside the accepted practice of that "rough-and-tumble world" as to constitute improper methods.

In sum, Lewis-Gale's actions in this case involving at-will contracts did not rise as a matter of law to the level of the "improper methods" required for Dr. Alldredge to prove that Lewis-Gale's purposeful interference in her contract

relationship with SWEP was tortious.  Accordingly, we hold that the circuit court erred in not striking Dr. Alldredge's evidence and in not granting summary judgment to Lewis-Gale.

CONCLUSION

For the reasons stated, we will reverse the judgment of the circuit court confirming the jury verdict in favor of Alldredge and enter final judgment for Lewis-Gale.[2]

Reversed and final judgment.

---

[2] Having found that Dr. Alldredge failed to meet her burden of proof to establish tortious interference in her contract relationship with SWEP by Lewis-Gale, its remaining assignments of error and the assignment of cross-error raised by Dr. Alldredge, all concerning the elements and quantum of her damages, are now moot.