# CIRCUIT COURT OF FAIRFAX COUNTY

Adel Kebaish

    v.

INOVA Health Care
Services et al.

June 25, 2012

Case No. CL-2011-17659

By Judge Jane Marum Roush

This matter is before the court on the plaintiff's motion to reconsider the court's ruling sustaining in part the defendants' demurrer to the amended complaint. For the reasons stated below, the motion to reconsider will be granted in part and denied in part.

*Background*

Adel Kebaish ("Dr. Kebaish" or the "plaintiff") filed his amended complaint on February 17, 2012, against INOVA Health Care Services, d/b/a INOVA Fairfax Hospital ("INOVA"), one of its administrators, and ten of its doctors and physician assistants (collectively, the "Individual Defendants"). In his 340-paragraph, 92-page amended complaint, Dr. Kebaish alleges the following causes of action:

Count I: Defamation and Defamation Per Se (against all defendants);

Count II: Breach of Contract (against INOVA);

Count III: Tortious Interference with Existing Contract and/or Business Relationships and Business Expectancy (against all defendants);

Count IV: Common Law Conspiracy (against all defendants);

Count V: Statutory Conspiracy to Injure Dr. Kebaish in Violation of Va. Code §§ 18.2-499 and 18.2-500 (against all defendants);

Count VI: Unjust Enrichment (against INOVA).

Dr. Kebaish alleges that he is an orthopedic and spine trauma surgeon who formerly provided services to INOVA on an as needed basis pursuant to a professional services agreement. He alleges that INOVA and the Individual Defendants "relentlessly pursued their efforts to destroy the Plaintiff, out of ego, and a desire to achieve financial profit and individual professional promotion." Amended Complaint, ¶ 1.[1] Dr. Kebaish alleges that the Individual Defendants and others "engaged in an ongoing campaign of ridicule, falsification, defamation, exaggeration, condoning of misconduct, and misrepresentations designed to, by innuendo, implication, and inference, vilify and defame Dr. Kebaish in his profession trade and reputation." ¶ 6. INOVA, it is alleged, "sided with the conspirators" and terminated Dr. Kebaish's professional services agreement. ¶¶ 7 and 8. Dr. Kebaish alleges that he was terminated because he objected to both substandard care provide by INOVA and INOVA's fraudulent billing practices. ¶¶ 1, 2-4, 7, 9, 10, 15, 106, 109, 110, 117-120, 149, 158, 177.

The defendants demurred to the complaint on various grounds that will be discussed below. At the hearing on the demurrer on February 24, 2012, the court sustained the demurrer to Count I: Defamation, except as to two alleged statements set forth in ¶¶ 221 and 222; specifically, statements that Dr. Kebaish had once operated on a patient who was DNR (do not resuscitate) without the family's consent and that Dr. Kebaish's privileges at INOVA's emergency room had been "revoked." The court sustained the demurrer as to Count II: Breach of Contract, Count III: Tortious Interference, Count IV: Common Law Conspiracy, and Count V: Statutory Conspiracy. The court overruled the demurrer as to Count VI: Unjust Enrichment. The court granted plaintiff leave to amend the complaint as to Count I only to amplify the factual allegations that Dr. Kebaish had operated on a DNR patient without the family's consent and that his privileges at INOVA's emergency room had been revoked.

The plaintiff has moved the court to reconsider its rulings as to Counts I through V and the defendants have opposed the reconsideration. Each count will be addressed in turn.

*Count I: Defamation and Defamation Per Se*
*(against all defendants)*

In Count I, Dr. Kebaish alleges that the defendants, at various times, made defamatory statements about his abilities as a surgeon. The defendants demur to Count I on the grounds that, in many instances, the plaintiff has failed to specify who said what to whom. In addition, the defendants argue,

---

[1] Unless otherwise indicated, all further paragraph references are to the numbered paragraphs of the amended complaint filed on February 17, 2012.

to the extent that specific statements are quoted, they are statements of mere opinion.

The Supreme Court of Virginia has summarized the applicable legal standards thusly:

> In order to assert a claim of defamation, the plaintiff must first show that a defendant has published a false factual statement that concerns and harms the plaintiff or the plaintiff's reputation. *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 46, 670 S.E.2d 746, 750 (2009). The plaintiff also must show that the defendant knew that the statement was false, or, believing that the statement was true, lacked a reasonable basis for such belief, or acted negligently in failing to determine the facts on which the publication was based. *Id.* When a plaintiff asserts that the defendant acted negligently, the plaintiff must further prove that the defamatory statement made apparent a substantial danger to the plaintiff's reputation. *Id.*
>
> "Expressions of opinion, however, are constitutionally protected and are not actionable as defamation." *Id.* at 47, 670 S.E.2d at 750. Therefore, in evaluating a demurrer to a claim of defamation, a trial court "must determine as a matter of law whether the allegedly defamatory statements contain provably false factual statements or are merely statements of opinion." *Id.* "When a statement is relative in nature and depends largely on a speaker's viewpoint, that statement is an expression of opinion. Factual statements made in support of an opinion, however, can form the basis for a defamation action." *Id.* at 47, 670 S.E.2d at 751 (internal citations omitted).
>
> "In determining whether a statement is one of fact or opinion, a court may not isolate one portion of the statement at issue from another portion of the statement. Rather, a court must consider the statement as a whole." *Id.* (internal citations omitted). In other words, in considering whether a plaintiff has adequately pleaded a cause of action for defamation, the court must evaluate all of the statements attributed to the defendant and determine whether, taken as a whole, a jury could find that defendant knew or should have known that the factual elements of the statements were false and defamatory.

*Lewis v. Kei*, 281 Va. 715, 725, 708 S.E.2d 884, 891 (2011).

In order to rule on the plaintiff's motion to reconsider, the court has reviewed each of the statements in the amended complaint alleged to be defamatory. The court agrees with the defendants that most of the statements

are statements of opinion that are incapable of being proved false. Some of the statements are simply not actionable as defamation. In addition, many of the statements alleged to be defamatory were made by persons who are not defendants in this action. The court categorizes the allegations of the Amended Complaint as follows:

1. Statements of opinion:

Dr. Theiss's statement that Dr. Kebaish is incompetent and unqualified and that he would like to get rid of Dr. Kebaish. ¶ 124.

Dr. Hymes's statement that Dr. Kebaish is incompetent. ¶ 127.

Dr. Theiss's report to Dr. Kebaish that the physician assistants did not like Dr. Kebaish's surgical skills and that they thought he was a bad surgeon who had poor technique. ¶ 147.

Dr. Theiss's statement that he thought Dr. Kebaish was a foreigner with a bad accent and that American patients do not like foreign doctors. ¶ 155.

Physician assistants at INOVA carried a card that said "Dear EMS, please if you find me in an accident and unconscious and you have to take me to Fairfax Hospital, please do not let Dr. Kebaish operate on me. I would rather die than lose an arm or a leg." ¶ 195.

The physician assistants' telling an investigator for the Virginia Board of Medicine that they carried cards saying that they did not want to be treated by Dr. Kebaish in the event of an accident. ¶ 198.

Ms. Davies's statement that Dr. Kebaish had "no compassion" for a patient. ¶ 214.

2. Statements or conduct that are not actionable as defamation:

"[C]ertain" of the defendant physician assistants made racial comments concerning Dr. Kebaish's accent and they ridiculed Dr. Kebaish behind his back. ¶ 156.

Ms. Davies advised Dr. Paik to file a complaint against Dr. Kebaish to avoid the repercussions of Dr. Paik's misconduct.

Mr. Westbrook's email to Dr. Theiss alerting him to unaddressed injuries with one of Dr. Kebaish's patients. ¶ 180.

Dr. Theiss's email to Dr. Kebaish and others that stated that Dr. Kebaish was unable to work with the physician assistants in a positive manner and that, until the issues were sorted out, physician assistants would no longer assist Dr. Kebaish in surgeries. ¶ 185.

Dr. Theiss's email to Dr. Kebaish and others advising that Dr. Kebaish would no longer have physician assistant coverage. ¶ 187.

Dr. Theiss's advising Dr. Kebaish that physician assistants at INOVA carried a card that said "Dear EMS, please if you find me in an accident and unconscious and you have to take me to Fairfax Hospital, please do not let

Dr. Kebaish operate on me. I would rather die than lose an arm or a leg." ¶ 195.

Ms. Davies's telling an investigator for the Virginia Board of Medicine that she knew of Dr. Kebaish's "complications and horrible cases" and, if given "some time, I could dig up some real bad cases." ¶ 198.

Ms. Cusimano filing an internal complaint against Dr. Kebaish at the hospital stating that he had "invaded [her] personal space" when he confronted her about whether she carried a card stating that she did not want to be treated by Dr. Kebaish in the event of an accident. ¶ 209.

Unspecified defendants' advising Dr. Kebaish's patients to get a second opinion. ¶ 231.

Dr. Schulman's offering one of Dr. Kebaish's patients a second opinion. ¶ 232.

3. Statements made by non-defendants:

Ms. Silver's statement that Dr. Kebaish's name should not be mentioned because "he is not an example that we need to follow." ¶ 157.

Dr. Shawen's statement that Dr. Kebaish is a liar and an unqualified surgeon. ¶ 167.

Dr. Shawen's statement that Dr. Kebaish was universally considered to be a detriment to resident education. ¶ 167.

Dr. Paik's statement that he did not think that Dr. Kebaish was a qualified surgeon. ¶ 171.

Ms. Heenan's filing in internal complaint against Dr. Kebaish in which she said that a patient's family felt uncomfortable about Dr. Kebaish's shaking hands, sought a second opinion, and was aggressively confronted by Dr. Kebaish. ¶ 234.

Ms. Heenan's statement that Dr. Kebaish's "hands shake." ¶ 240.

The court previous ruled that statements alleged in ¶ 221 (that Dr. Kebaish operated on a DNR patient without the family's consent) and ¶ 222 (that Dr. Kebaish's privileges at INOVA Fairfax Hospital's emergency room had been "revoked") are statements of fact that may support a claim of defamation. On reconsideration, the court concludes that the following additional allegations are statements of fact that, if proven to have been made and proven to be false, may be defamatory:

Dr. Theiss's statement that Dr. Kebaish turned away Medicaid patients. ¶ 125.

Ms. Davies's statement that Dr. Kebaish had caused a sciatic nerve injury to a patient treated for pelvic fracture and was hiding this fact. ¶ 142.

Ms. Cusimano's statements to an investigator for the Virginia Board of Medicine that Dr. Kebaish had operated on patients without taking x-rays, had caused complications, and had "missed fractures on patients." ¶ 213.

The Defendants' statements to potential patients that Dr. Kebaish's "hands shake." ¶¶ 231, 233, 236, 240.

Therefore, the court will grant the motion to reconsider to the extent of these four additional statements. The plaintiff will be granted leave to amend to allege these statements in support of his defamation claim. The present Amended Complaint is infirm because, in most instances, it does not specify which of the defendants made the statements that Dr. Kebaish's hands shake. In addition, the plaintiff must allege that Ms. Cusimano's statements to the investigator for the Virginia Board of Medicine were made in bad faith or with malicious intent. Va. Code Ann. § 54.1-2909(E). Except to this limited extent, the motion to reconsider the order sustaining the demurrer to Count I will be denied.

*Count II: Breach of Contract (against INOVA)*

Count II alleges that INOVA breached its professional services agreement with Dr. Kebaish when it notified him on October 29, 2009, that it would no longer call on him to provide services as a trauma surgeon. Dr. Kebaish alleges that the notice was ineffective to terminate his services because his contract with INOVA, which was attached to the Amended Complaint as Attachment 1, required 90 days advance notice of termination. ¶ 205. Dr. Kebaish alleges that on November 13, 2009, he received a letter from defendant Christiansen, the hospital's administrator, notifying him that his termination would be effective 90 days from the date of the letter. ¶ 206. Dr. Kebaish alleges that he performed trauma coverage between March 1, 2010, and March 4, 2010, for which he has not been compensated. ¶ 226.

INOVA demurred to Count II on the grounds that "it is indisputable that INOVA had the right to terminate the Agreement without cause and that INOVA provided written notice of termination." Demurrer at p. 4.

Dr. Kebaish's professional services contract with INOVA is attached to the Amended Complaint. Accordingly, the court can consider the contact in ruling on the demurrer. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 278 (1993) ("On demurrer, a court may examine not only the substantive allegations of the pleading attacked but also any accompanying exhibit mentioned in the pleading"). Furthermore, "a court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings." *Ward's Equipment v. New Holland North Am.*, 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997).

Dr. Kebaish's professional services agreement with INOVA provided that Dr. Kebaish, as an independent contractor, was to provide services as "on-call trauma surgeon providing orthopedic surgery and spine care services." Under the agreement, Dr. Kebaish was not guaranteed any

minimum number of days that he would actually be called. Dr. Kebaish was to be paid $1,100 per day for each day that he provided such services. The agreement could be "terminated by either party without penalty or cause, upon not less than ninety (90) days written notice." See Amended Complaint, Attachment 1.

The court sustained the demurrer to Count II without leave to amend because the Amended Complaint, together with its attachments, demonstrate as a matter of law that INOVA did not breach the agreement in terminating Dr. Kebaish's services on 90 days' advance written notice. Dr. Kebaish's allegations demonstrate that he was given 90 days' advance notice of the termination of his contract. The contract itself shows that there was no obligation of INOVA to continue to request Dr. Kebaish's services during the 90-day notice period before the contract terminated. Dr. Kebaish's services in March 2010 were provided *after* the agreement was terminated. His claim for payment for those days is the subject of Count VI: Unjust Enrichment, which survived demurrer.

In his motion to reconsider, Dr. Kebaish has raised no new matters that have not been previously considered by the court. Accordingly, the motion to reconsider the order sustaining the demurrer to Count II without leave to amend is denied.

While leave to amend is usually liberally granted, the Amended Complaint is in fact the fifth iteration of Dr. Kebaish's complaints against the defendants. He previously sued these defendants (and others) arising from the same set of facts in this court and in the United States District Court for the Eastern District of Virginia. The court does not feel that any further leave to amend is warranted. See *Kebaish v. INOVA Health Care Services, et al.*, CL-2010-9005 (Fairfax Circuit Court); *Kebaish v. INOVA Health Care Services, et al.*, 731 F. Supp. 2d 483 (E.D. Va. 2010); *Kebaish v. INOVA Health Care Services, et al.*, CL-2010-14225 (Fairfax Circuit Court). The last of these cases is presently the subject of an appeal pending before the Supreme Court of Virginia.

*Count III: Tortious Interference with Existing Contract and/or Business Relationships and Business Expectancy (against all defendants)*

In Count III, Dr. Kebaish alleges that each of the Individual Defendants knew that Dr. Kebaish "could, and would, pursue a successful and financially rewarding career at other hospitals and in his private practice should his Agreement and privilege relationship with INOVA end." ¶ 273. He further claims that he "had a significant probability of continued and significant economic benefit with INOVA Fairfax Hospital, as well as with

other hospitals and private practice." ¶ 274. In broad, conclusory terms, Dr. Kebaish alleges that each of the Individual Defendants "acting outside the scope of [his or her] employment, and with personal motives, conspired with the other Defendants, and acting individually, employed improper means to interfere with Dr. Kebaish's Agreement [with INOVA] and business expectancies as a surgeon with privileges at INOVA Fairfax Hospital, at other hospitals, and in private practice." ¶¶ 275 to 285. INOVA, it is alleged, conspired with the Individual Defendants, to "injure and interfere with Dr. Kebaish's business expectancies as a surgeon with privileges at other area hospitals and in private practice." ¶ 287. The "improper means" employed by the defendants are alleged to include unethical and unprofessional conduct, unfair competition, conspiring to injure Dr. Kebaish's reputation, and engaging in misrepresentations, deception, and dishonesty. ¶ 288. It is further alleged that the defendants acted with "malice, hatred, ill will, and spite and/or evinced a conscious disregard for Dr. Kebaish's rights." ¶ 291.

Defendants demurred to Count III on the grounds that, as a matter of law: (i) INOVA cannot tortiously interfere with its own agreement; (ii) a corporation such as INOVA cannot conspire with its own agents, the Individual Defendants; (iii) the "personal stake" exception that Dr. Kebaish relies on has never been adopted in Virginia; (iv) Dr. Kebaish has failed to allege any legally cognizable "improper means;" and (v) Dr. Kebaish has alleged no "reasonably cognizable" business expectancy with INOVA or any other hospital with which any defendant could had interfered. Demurrer at pp. 4-5.

Virginia law recognizes the tort of intentional interference with performance of a contract or business expectancy by a third party. The elements required for a *prima facie* showing of the tort are: (i) the existence of a valid contractual relationship or business expectancy; (ii) knowledge of the relationship or expectancy on the part of the interferer; (iii) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (iv) resultant damage to the party whose relationship or expectancy has been disrupted. Additionally, when a contract is terminable at will, a plaintiff, in order to present a *prima facie* case of tortious interference, must allege and prove not only an intentional interference that caused the termination of the at-will contract, but also that the defendant employed improper methods. The plaintiff need not prove that the "improper methods" used were inherently illegal or tortious, but only that the interference was intentional and improper under the circumstances of the particular case. *Lewis-Gale Medical Center v. Alldredge*, 282 Va. 141, 149-50, 710 S.E.2d 716, 720 (2011) (internal quotations, citations, and emphasis omitted). *See also Maximus, Inc. v. Lockheed Info. Mgmt. Sys.*, 254 Va. 408, 493 S.E.2d 375 (1997) ("improper means" is an element of the cause of action for tortious interference with a business or contract expectancy).

> Methods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules. Improper methods may include violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship. Methods also may be improper because they violate an established standard of a trade or profession, or involve unethical conduct. Sharp dealing, overreaching, or unfair competition may also constitute improper methods.

*Lewis-Gale*, 282 Va. at 150-51, *citing Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 559, 708 S.E.2d 867, 870 (2011). "Improper means" do not include "actions solely motivated by spite, ill will, and malice" toward the plaintiff. *Dunn, McCormack & MacPherson*, 281 Va. at 559.

The plaintiff concedes that INOVA cannot tortiously interfere with its own contract with Dr. Kebaish. The tort is, after all, intentional interference with performance of a contract or business expectancy by a *third party*. Dr. Kebaish argues, however, that the Individual Defendants can be held liable for interfering with his contract with INOVA.

Dr. Kebaish's arguments are unpersuasive to the court. There are insufficient factual allegations to support his bald claim that the Individual Defendants were acting as anything other than agents of INOVA. A corporation acts only through its agents. Because the Individual Defendants were acting as agents of INOVA, they cannot be liable for interfering with their principal's contract with Dr. Kebaish.

There is a second aspect to Count III; specifically, the plaintiff's claims that INOVA and the Individual Defendants tortiously interfered with his business expectancy to be granted privileges at other area hospitals when his contract with INOVA ended.

Dr. Kebaish alleges that he had a reasonable expectation that he could regain his privileges at Reston Hospital, Potomac Hospital, and Fair Oaks Hospital, if and when his contract with INOVA ended. ¶¶ 216 to 225, 274. He alleges that the INOVA and the Individual Defendants were aware of that expectancy. ¶ 273.

Dr. Kebaish alleges that he was denied privileges at Reston Hospital because, he was told, "the volume of malpractice claims that you have been named in since 1991." ¶ 218. Dr. Kebaish believes that Reston Hospital's stated reason was pretextual. He states that he has not been held liable for medical malpractice since 1991 and the number of times that he has been named a defendant in a medical malpractice suit is not greater that other doctors who have privileges at Reston Hospital. ¶ 219. He later learned that the real reason he was denied privileges at Reston Hospital was because

Drs. Schwartzbach, Hymes, Schulman, and Malekzadeh had defamed him by stating that he was careless, that he was not a qualified surgeon, that he had many surgical complications, and that he had operated on a DNR patient without the family's consent. ¶ 221.

Dr. Kebaish claims that he was denied privileges at Potomac Hospital because Potomac Hospital heard a rumor that he has been suspended at Fairfax Hospital and the defendant Dr. Theiss told Potomac Hospital that his privileges at INOVA Fairfax Hospital's emergency room had been "revoked." ¶ 222.

Dr. Kebaish claims that he was denied privileges at Fair Oaks Hospital because of "innuendo" from other doctors that Dr. Kebaish has past spine surgery complications. ¶ 224. Dr. Kebaish alleges that this innuendo was repeated by the Individual Defendants.

Defamation can constitute "improper means" that will support a claim of tortious interference with a contract expectancy. *Lewis-Gale, supra.* For the same reasons as stated in ruling on the motion to reconsider Count I: Defamation, the allegations that Dr. Kebaish was denied privileges at Reston Hospital because Drs. Schwartzbach, Hymes, Schulman, and Malekzadeh told the hospital that he has once operated on a DNR patient without the family's consent is a sufficient allegation of an improper means. That statement, if proven, could be defamatory. Similarly, the allegation that Dr. Kebaish was denied privileges at Potomac Hospital because Dr. Theiss told the hospital that his privileges at INOVA Fairfax Hospital's emergency room had been "revoked" is a sufficient allegation of an improper means. That statement, if proven, could be defamatory. The allegations that Dr. Kebaish was denied privileges at Fair Oaks Hospital because of "innuendo" of past spine surgery complications is insufficient to support the element of "improper means."

The motion to reconsider the order sustaining the demurer to Count III will be granted to the limited extent that Dr. Kebaish will be granted leave to amend Count III to allege only (1) that Drs. Schwartzbach, Hymes, Schulman, and Malekzadeh tortiously interfered with his expectancy to be granted privileges at Reston Hospital when they told the hospital that he had operated on a DNR patient without the family's consent and (2) that Dr. Theiss tortiously interfered with his expectancy to gain privileges at Potomac Hospital by telling the hospital that his privileges at INOVA Fairfax Hospital's emergency room had been "revoked."

In all other respects, the motion to reconsider the order sustaining the demurrer to Count III will be denied.

*Count IV: Common Law Conspiracy*
*(against all defendants)*

The demurrer to Count IV was sustained on the basis of the intra-corporate immunity doctrine. Nothing the plaintiff has asserted in his motion to reconsider raises any facts or arguments that have not previously been considered by the court. Therefore, the motion to reconsider the order sustaining the demurrer to Count IV will be denied.

*Count V: Statutory Conspiracy in Violation of*
*Va. Code §§ 18.2-499 and 18.2-500*
*(against all defendants)*

The demurrer to Count V was sustained on the basis of the intra-corporate immunity doctrine. Nothing the plaintiff has asserted in his motion to reconsider raises any facts or arguments that have not previously been considered by the court. Therefore, the motion to reconsider the order sustaining the demurrer to Count V will be denied.

*Conclusion*

For the forgoing reasons, the motion to reconsider will be granted in part and denied in part. Will Ms. Kane please prepare an order consistent with the rulings in this letter, forward it to Mr. Wolf to note his objections, and present it to the court for entry within twenty days. The plaintiff shall have ten days from the entry of the order to amend his pleadings as specified in this letter and the court's order of February 24, 2012. The defendants shall have ten days thereafter to file their responsive pleadings.