**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1696**

PRIORITY AUTO GROUP, INC.,

        Plaintiff - Appellant,

    v.

FORD MOTOR COMPANY,

        Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Rebecca Beach Smith, Chief District Judge. (2:12-cv-00492-RBS-LRL)

Argued: May 15, 2014          Decided: June 26, 2014

Before GREGORY, AGEE, and KEENAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Brad D. Weiss, CHARAPP & WEISS, LLP, McLean, Virginia, for Appellant. Dominic Francis Perella, HOGAN LOVELLS US LLP, Washington, D.C., for Appellee. **ON BRIEF:** Michael G. Charapp, CHARAPP & WEISS, LLP, McLean, Virginia, for Appellant. Kurt D. Williams, BERKOWITZ OLIVER WILLIAMS SHAW & EISENBRANDT LLP, Kansas City, Missouri; Christopher T. Handman, Sean Marotta, HOGAN LOVELLS US LLP, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this case, the prospective buyer of a car dealership sued a manufacturer-franchisor who exercised its right of first refusal under the franchise agreement, thereby preventing the prospective buyer from purchasing the dealership. The prospective buyer, Priority Auto Group, Inc. ("Priority Auto"), alleged that Ford Motor Company ("Ford") imposed an unlawful condition on the sale of the dealership, in violation of Virginia Code § 46.2-1569(3a), and engaged in tortious interference with its contract and business expectancy. The district court dismissed these claims pursuant to Federal Rule of Civil Procedure 12(c), and Priority Auto now appeals. For the reasons that follow, we affirm the judgment of the district court.

I.

Kimnach Ford, Inc., ("Kimnach") operated an authorized Ford dealership in Norfolk, Virginia. Subject to certain limitations not at issue here, the Kimnach-Ford franchise agreement gave Ford the right of first refusal in the event that Kimnach's owner decided to sell the dealership.

In 2010, Kimnach's owner agreed to sell Kimnach to Priority Auto under a purchase agreement that conditioned the sale on Ford approving Priority Auto as a Ford franchisee. Kimnach's

2

owner notified Ford of the intended sale and requested that Ford approve Priority Auto as a Ford dealer. Ford declined to do so, stating instead that it would exercise its right of first refusal. It then assigned this right to a third party, which purchased Kimnach, dispersed its assets, and closed the dealership.

Priority Auto sued Ford in Virginia state court alleging, in relevant part, that Ford violated Virginia Code § 46.2-1569(3a) ("Subdivision 3a"),[1] which governs a motor vehicle manufacturer's ability to impose conditions on the transfer or sale of franchises, and also tortiously interfered with its purchase agreement and business expectancy under Virginia common law. Specifically, Priority Auto asserted that Ford unlawfully rejected it as a prospective buyer of the Kimnach dealership because Ford had not relied on a permitted statutory ground. Furthermore, Priority Auto contended that although Subdivision 3a states that a manufacturer's decision to exercise the right of first refusal does not impose a prohibited condition, Ford could not rely on that exception because it had not complied with one of the requirements for exercising that right under § 46.2-1569.1. Namely, Priority Auto maintained that Ford did not give Kimnach's owner "the same or greater consideration" for

_____

[1] Except where noted, all statutory citations are to the Code of Virginia.

3

the dealership as Priority Auto's purchase would have provided. See § 46.2-1569.1(2). Finally, Priority Auto asserted that Ford's conduct interfered with its plan to purchase Kimnach, and constituted tortious interference with a contract and tortious interference with business expectancy under Virginia common law.

Ford removed the case to the District Court for the Eastern District of Virginia on the basis of diversity jurisdiction, and then moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

The district court referred the case to a magistrate judge, who conducted a hearing and issued a report recommending that the district court grant the motion to dismiss. The magistrate judge concluded that Priority Auto lacked standing to bring a claim under Subdivision 3a that was predicated on challenging the sufficiency of the consideration Ford paid to Kimnach's owner when it exercised the right of first refusal. The magistrate judge also concluded that Priority Auto's tortious interference claims failed as a matter of law because Ford's exercise of the statutory and contractual right of first refusal could not constitute the necessary element of an improper method or wrongful means under Virginia law. The district court adopted the magistrate judge's findings and recommendations in full, and dismissed Priority Auto's claims with prejudice.

4

<u>Priority Auto Group, Inc., v. Ford Motor Co.</u>, No. 2:12-cv-492, 2013 U.S. Dist. LEXIS 69216 (E.D. Va. May 15, 2013).

Priority Auto noted a timely appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

II.

Priority Auto raises two issues on appeal: (1) whether the district court erred in holding that Priority Auto did not have standing to sue Ford under Subdivision 3a, and (2) whether the district court erred in concluding Priority Auto's tortious interference claims failed as a matter of law because Ford's exercise of the right of first refusal did not constitute an improper act under Virginia tort law.

This Court reviews de novo a district court's grant of a Rule 12(c) motion for judgment on the pleadings. <u>Butler v. United States</u>, 702 F.3d 749, 751 (4th Cir. 2012). The standard for Rule 12(c) motions is the same as applied to Rule 12(b)(6) motions, which should only be granted if, "accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999).

As a federal court exercising diversity jurisdiction, we are tasked with applying the law of Virginia as it would be applied by the Supreme Court of Virginia if the case were before that court. See Nature Conservancy v. Machipongo Club, Inc., 579 F.2d 873, 875 (4th Cir. 1978). Although the Supreme Court of Virginia has not opined on the exact issues and statutory questions raised in this case, we conclude that well-settled overarching legal principles allow us to fulfill this charge.[2]

A.

Priority Auto first asserts that it has a cause of action under Subdivision 3a because Ford imposed a prohibited condition on the sale of the Kimnach dealership. That is to say, Priority Auto claims Ford is amenable to suit under Subdivision 3a because Ford exercised its contractual and statutory right of first refusal in a way that ultimately "exercise[d] [a] right of first refusal that did not meet the requirements of section 46.2-1569.1."[3]  (Opening Br. 26.)  Priority Auto further contends

_____

[2] Priority Auto has also moved for this Court to certify several questions to the Supreme Court of Virginia.  Because we conclude certification is not necessary to resolve the issues before us, we deny the motion.

[3] Priority Auto also asserts that because Ford's exercise of the right of first refusal should be deemed ineffective, the only way Ford could lawfully prevent Priority Auto from purchasing the Kimnach dealership was if it had complied with the requirements of § 46.2-1569(3) ("Subdivision 3") by relying
(Continued)

6

that the district court's holding that it lacked standing misapprehended the nature of its claim since it was not proceeding directly under § 46.2-1569.1 (governing the right of first refusal), but rather under Subdivision 3a (governing the imposition of conditions on the sale of a dealership).

Priority Auto's arguments simply miss the mark. Despite Priority Auto's attempts to cast itself as a victim of Ford's business machinations, it does not matter how earnestly Priority Auto wanted to purchase Kimnach, nor does it matter why Ford opted to exercise its right of first refusal or what Ford (via its assignee) did with Kimnach after exercising that right. Put differently, neither the prelude nor the postscript to Ford's

_____

on one of the listed grounds for rejecting a prospective buyer. As Ford did not independently satisfy those requirements, Priority Auto contends Ford is amenable to suit under these statutes for blocking Priority Auto's purchase of Kimnach.

The parties do not dispute that Ford did not provide written notice pursuant to or otherwise rely on one of Subdivision 3's grounds for prohibiting Kimnach's sale to Priority Auto.

The magistrate judge correctly construed these provisions in tandem by recognizing that Subdivision 3a "does not grant a prospective buyer of an automobile dealership the right to sue a manufacturer that rejects the prospective buyer but also fails to give the dealer one of four statements of specific grounds for the rejection [delineated in Subdivision 3] if the manufacturer exercises its right of first refusal under § 46.2-1569.1." (J.A. 949.) Our focus, then, is on whether Priority Auto may use Subdivision 3a to challenge the validity of Ford's exercise of the right of first refusal, and specifically, the sufficiency of the consideration it paid in attempting to exercise that right.

exercise of the right of first refusal matters for purposes of determining whether Priority Auto can pursue the particular challenges it seeks to bring in this case.

Although "statutory standing" is a phrase primarily invoked in federal courts, the concept is firmly established in Virginia jurisprudence as well.   In <u>Small v. Fed. Nat'l Mortg. Assoc.</u>, 747 S.E.2d 817 (Va. 2013), for example, the Supreme Court of Virginia described the relevant inquiry as

> mak[ing] certain that a party who asserts a particular position has the legal right to do so and that his rights will be affected by the disposition of the case.   When a plaintiff files an action under a particular statute . . . , the standing inquiry does not turn simply on whether the plaintiff has a personal stake in the outcome of the controversy, or whether the plaintiff's rights will be affected by the disposition of the case.   Rather, the plaintiff must possess the legal right to bring the action, which depends on the provisions of the relevant statute.

<u>Id.</u> at 820 (quotation marks and citations omitted).

Our analysis begins with the text of the statute.   <u>See</u> <u>Antisdel v. Ashby</u>, 688 S.E.2d 163, 166 (Va. 2010) ("When the language of a statute is unambiguous, [the Court] is bound by the plain meaning of the words used.").   Subdivision 3a prohibits a manufacturer from "impos[ing] a condition on the approval of the sale or transfer of the ownership of a dealership . . . if the condition would violate the provisions of this title if imposed on the existing dealer."   And under certain conditions not in dispute here, it authorizes a

8

prospective buyer to file suit for the violation of Subdivision 3 or Subdivision 3a for damages suffered as a result of the violation of the statute. Lastly, however, Subdivision 3a specifically provides that "[n]otwithstanding the foregoing, an exercise of the right of first refusal by the manufacturer . . . pursuant to § 46.2-1569.1 shall not be considered the imposition of a condition prohibited by this section."

Under Subdivision 3a's plain terms, then, no cause of action lies when a manufacturer conditions the sale of a franchise on the exercise of its right of first refusal. That is precisely what occurred here: Priority Auto attempted to purchase the Kimnach dealership. Ford, the manufacturer, "impose[d] a condition on the approval of the sale or transfer of the ownership of [Kimnach] dealership" by invoking its contractual right of first refusal—i.e., by requiring that it, rather than Priority Auto, be given the opportunity to purchase the dealership. Cf. § 46.2-1569(3a). Moreover, Ford's exercise of the right of first refusal "shall not be considered the imposition of a condition prohibited by" Virginia statute. Id. As such, Priority Auto has no standing to bring a claim that Ford's exercise of the right of first refusal violated Subdivision 3a because Subdivision 3a expressly prohibits that argument. Cf. Small, 747 S.E.2d at 820 (characterizing

statutory standing as ensuring that "a party who asserts a particular position has a legal right to do so").

As noted, Priority Auto acknowledges that exercising a right of first refusal would ordinarily not be considered an improper condition under Subdivision 3a. Nonetheless, Priority Auto contends that Ford cannot rely on that exemption because Ford failed to separately satisfy one of the requirements for exercising a right of first refusal under Virginia Code § 46.2-1569.1. That is, Priority Auto asserts that a lawful exercise of the right of first refusal requires meeting all of the § 46.2-1569.1 requirements for the exercise of the right of first refusal in order to avoid being considered "the imposition of a condition prohibited by" Subdivision 3a. Citing the requirement in § 46.2-1569.1(2) that the exercise "will result in the dealer's and dealer's owner's receiving the same or greater consideration as they have contracted to receive in connection with the proposed change of ownership or transfer," Priority Auto maintains that Kimnach's owner actually received less consideration as a result of its sale to Ford's assignee than it would if Priority Auto had purchased the dealership. As a consequence, Priority Auto concludes Ford did not lawfully exercise the right of first refusal under § 46.2-1569.1 and that Subdivision 3a authorizes it to challenge the validity of the

consideration Ford provided under § 46.2-1569.1 since that is pertinent to its Subdivision 3a claim.

Rather than misapprehending the nature of Priority Auto's claim, the district court understood fully what Priority Auto sought to do and why it had to pursue the circuitous argument it advanced. Moreover, the district court understood that although Priority Auto purported to proceed under Subdivision 3a, the legal right it was asserting in order to bring that claim was actually set forth in § 46.2-1569.1(2), and was designed to protect the dealer rather than the prospective buyer. The district court thus appropriately recognized its duty to interpret statutory provisions in a manner that gives "full meaning, force, and effect" to related statutes. Antisdel, 688 S.E.2d at 166.

As the district court held, Priority Auto's understanding of the statutes "myopically focuses on Virginia Code §§ 46.2-1569 and 46.2-1569.1 without regard to their harmonization with each other and with the purpose of the [Motor Vehicle Franchise] Act." (J.A. 948.) As noted, § 46.2-1569.1 sets forth four requirements that a manufacturer must satisfy in order to exercise its right of first refusal. Three of the requirements, including the adequacy of the consideration challenged here, discuss obligations between the manufacturer and the dealer or dealer's owner. The fourth requirement—which is not at issue

11

here—entitles the proposed buyer to "reasonable expenses" incurred prior to the manufacturer's exercise of its rights.[4] § 46.2-1569.1(4).

As the magistrate judge observed, this fourth requirement "is the only one in § 46.2-1569.1 that specifically refers to prospective buyers and grants them some form of relief." (J.A. 952.) And "[b]ecause § 46.2-1569.1 grants the prospective buyer a specific benefit arising from the manufacturer's exercise of its right of first refusal, there can be no suggestion that the other provisions in that section, which are silent as to the prospective buyer, make a similar grant of benefits to the prospective buyer." (J.A. 952.) Simply put, the General Assembly granted prospective buyers only one right to relief following a manufacturer's exercise of the right of first refusal: a claim for reasonable expenses incurred, pursuant to § 46.2-1569.1(4). And Ford has already satisfied Priority Auto's claim for such relief in this case.

Adopting Priority Auto's interpretation of Subdivision 3a's right of first refusal exception would lead to several illogical results. At the outset, it places a prospective buyer in a much more significant position to thwart the objectives of permitting a right of first refusal than the Virginia statutes permit.

---

[4] Priority Auto concedes Ford has paid all its reasonable expenses due under § 46.2-1569.1(4).

12

See, e.g., <u>Fivebaugh v. Whitehead</u>, 559 S.E.2d 611, 615 (Va. 2002) ("[A] right of first refusal is included in a contract for the benefit of the person who is given the right."). The General Assembly has considered the effect of the exercise of a right of first refusal on a prospective buyer and has provided for what it believed to be adequate relief for those interests in that transaction, as provided in § 46.2-1569.1(4). Allowing prospective buyers a back door opportunity to recover, pursuant to Subdivision 3a, more than reasonable expenses under § 46.2-1569.1 would allow prospective buyers the opportunity to recover more than what the General Assembly believed they should be entitled to recover as a result of a manufacturer's decision to exercise its right of first refusal. For that reason, too, this interpretation would render the relief authorized under § 46.2-1569.1(4) meaningless.

Moreover, Priority Auto's position would allow a prospective buyer to "sue a manufacturer for allegedly depriving the dealer [not the prospective buyer itself] of the consideration to which it is entitled." (J.A. 952.) Nowhere has the Virginia legislature suggested that a prospective buyer can advance the dealer's interests when a manufacturer exercises its right of first refusal, let alone that it can recover the benefit of its proposed bargain from a manufacturer who invokes that right.

13

Priority Auto's position also would allow a prospective buyer to recover damages via Subdivision 3a based on a claimed violation of § 46.2-1569.1(2) even where—as by all accounts is the case here—the dealer is perfectly satisfied with the consideration it received. Priority Auto is thus seeking to rely on a statutory provision that does not protect its interest, but that of the dealer. And it seeks to do so not to advance the dealer's interests, but its own. Indeed, Priority Auto attempts to use § 46.2-1569.1(2) to recover greater relief than a dealer could conceivably recover under the statute. Neither Subdivision 3a nor § 46.2-1569.1 supports Priority Auto's view, nor do we conclude that is what the General Assembly intended when enacting these statutes.

Consistent with the district court's interpretation of these provisions, we believe the appropriate construction of the statutes as a whole does not allow a prospective buyer to challenge, via Subdivision 3a, the validity of the manufacturer's exercise of the right of first refusal under § 46.2-1569.1. Courts need look no further than to the manufacturer's exercise of the right of first refusal to conclude that no cause of action lies for Priority Auto's claimed violation of Subdivision 3a. This understanding of the statutes permits the protected parties to sue under § 46.2-1569.1 when they claim that the manufacturer's exercise of the

14

right of first refusal violated that statute's requirements. And it permits the protected parties to sue under Subdivision 3a for violations arising from an allegedly unlawful imposition of a condition of sale where the manufacturer has not exercised a right of first refusal. This reading "give[s] reasonable effect to every word" in both statutes, Jones v. Conwell, 314 S.E.2d 61, 64 (Va. 1984), reads the "related statutes in pari materia in order to give . . . consistent meaning to the language used by the General Assembly, Va. Polytechnic Inst. & State Univ. v. Interactive Return Serv., Inc., 626 S.E.2d 436, 439 (Va. 2006), and ultimately best carries out the legislative intent underlying each provision. See Boynton v. Kilgore, 623 S.E.2d 922, 925 (Va. 2006) ("When interpreting statutes, courts 'ascertain and give affect to the intention of the legislature.' That intent is usually self-evident from the words used in the statute. Consequently, courts apply the plain language of a statute unless the terms are ambiguous, or applying the plain language would lead to an absurd result." (citations omitted)).

The district court did not err in dismissing Priority Auto's statutory claim for lack of standing.

B.

Priority Auto alternatively challenges the district court's conclusion that its tortious interference claims failed as a

15

matter of law. In sum, Priority Auto contends that Ford is amenable to suit for tortious interference because it unlawfully exercised the right of first refusal by paying inadequate consideration for the dealership under Virginia Code § 46.2-1596.1(2) and by exercising the right solely in order to ensure the Kimnach dealership closed. These arguments lack merit.

Under Virginia law, the tort of intentional interference with contractual rights or business expectancy consists of the following prima facie elements: (1) the existence of a valid contractual relationship or business expectancy; (2) the putative interferer's knowledge of the relationship or expectancy; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the plaintiff. Lewis-Gale Med. Ctr., LLC v. Alldredge, 710 S.E.2d 716, 720 (Va. 2011). In certain contexts, including interference with prospective businesses and business expectancies, a plaintiff must also allege as part of its prima facie case "that the defendant employed improper methods." Id. at 149 (emphasis omitted); see also Duggin v. Adams, 360 S.E.2d 832, 836 (Va. 1987) (collecting cases); Dunlap v. Cottman Transmissions Sys., LLC, 754 S.E.2d 313, 318 n.5 (Va. 2014) (describing what constitutes "improper methods" as including "violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation,

16

duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship"). The magistrate judge's analysis focused on the third element—whether improper interference had occurred, and in particular whether Priority Auto properly alleged that Ford engaged in "improper methods" in thwarting the sale of Kimnach to Priority Auto by exercise of the right of first refusal.

Priority Auto's complaint alleged no more wrongful conduct than Ford exercising its right of first refusal. And while Priority Auto reasserted the same allegations as above for why it viewed that exercise as unlawful, it did not point to any other act as being the basis for its tort claims.[5] Under Virginia law, when a defendant is "engaged in the lawful exercise of [its] statutory and contractual rights which incidentally may have interfered with the [plaintiff's] private negotiations[, such conduct] is not actionable and will not support recovery for tortious interference with contractual relations." Charles E. Brauer Co. v. NationsBank of Virginia, N.A., 466 S.E.2d 382, 387 (Va. 1996); see also Lewis-Gale Med.

---

[5] On appeal, Priority Auto also references additional materials outside the pleadings to assert Ford's "improper methods" in exercising its right of first refusal. We do not consider these arguments or materials because the district court specifically refused to convert the Rule 12(c) motion into a motion for summary judgment or to consider materials that would require that conversion, and Priority Auto does not challenge those rulings in this appeal.

17

Ctr., 710 S.E.2d at 722 ("a threat to perform an act one is legally entitled to perform is not a wrongful act" for purposes of adequately alleging "improper methods" as part of a claim of tortious interference). Here, Ford was authorized by both statute and contract to exercise a right of first refusal that could "interfere" with Priority Auto's purchase of the Kimnach dealership. Ford could conceivably be sued under its contract with Kimnach or under Va. Code § 46.2-1596.1 if some aspect of its conduct violated either source of the right it was exercising. But the exercise of the right cannot itself be an "improper method" of interference that would make it amenable to suit in tort. Accordingly, the district court did not err in dismissing Priority Auto's claims for tortious interference.

## III.

For the reasons set forth above, the judgment of the district court dismissing Priority Auto's claims with prejudice is

AFFIRMED.

18