PRESENT: Lemons, C.J., McClanahan, Powell, Kelsey, and McCullough, JJ., and Russell and Millette, S.JJ.

MOUNT ALDIE, LLC

v. Record No. 160305

LAND TRUST OF VIRGINIA, INC.

OPINION BY
JUSTICE ELIZABETH A. McCLANAHAN
March 2, 2017

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Thomas D. Horne, Judge Designate

The circuit court awarded partial summary judgment to Land Trust of Virginia, Inc. ("LTV") on the issue of liability against Mount Aldie, LLC ("MA") upon finding that MA breached a provision of a conservation easement held by LTV. On appeal, MA argues the court erred in its construction of the easement and related findings. We agree, reverse the judgment of the circuit court, and remand for further proceedings.

BACKGROUND

In 2008, MA's predecessor in title conveyed the conservation easement at issue by "Deed of Gift of Easement" (the "Easement") to LTV covering a 60-acre tract of forested land adjacent to Aldie, Virginia and bounded in part by the Little River (the "property"). The Easement designates a 100-foot wide strip of the property running along the edge of the Little River, "as measured from the top [its] bank," as a "riparian buffer" (the "buffer"). After acquiring the property in 2009 and thereon conducting certain commercial forestry operations, MA performed tree removal and grading work in 2013 within the buffer for a distance of approximately 1,100 feet along what has long been known as the "Indian Spring Trail."

LTV filed the present action in the Loudoun County Circuit Court seeking an injunction to require MA to return the property to the condition that it was in prior to the work MA

performed within the buffer on grounds that MA breached the Easement. Alternatively, LTV sought money damages in an amount required to so restore the property.[1] LTV's central claim was that MA violated the Easement by failing to give notice to and receive permission from LTV before proceeding within the buffer to destroy "the historic primitive footpath" constituting the Indian Spring Trail "in order to construct some sort of road in its place."

Moving for partial summary judgment on the issue of liability, LTV asserted that the undisputed material facts showed that MA had violated among other provisions of the Easement that portion of Article II, Section 5(i) which provides, in addressing the grantor/landowner's reservation of non-commercial forest management rights: "No more than one new opening or clearing, and no new opening or clearings greater than 1,000 square feet, in the forest are permitted for noncommercial purposes, unless approved in advance and in writing by [LTV]." LTV argued that MA's breach of this provision was established based on MA's admissions that it (i) gave no notice to nor received any permission from LTV prior to performing the disputed buffer work and (ii) disturbed more than 1,000 square feet of earth within the buffer along the Indian Spring Trail in completing this work. The "footpath" comprising the Indian Spring Trail, LTV asserted, "has been obliterated and it has been replaced by something. Whether it is a trail or a road, it doesn't make any difference because the area cleared was more than 1,000 square feet."

MA argued in opposing LTV's motion that merely disturbing more than 1,000 square feet of earth does not constitute the creation of a "new opening or clearing" in the context of forest management under the terms of Article II, Section 5(i) of the Easement, and thus this provision is

---

[1] LTV also brought this action against MA's managing agent and principal, John A. Andrews, in his individual capacity, but the circuit court dismissed the claims against him and that ruling is not on appeal.

2

not controlling in this case. Rather, the controlling provision, MA contended, is Article II, Section 3, which establishes the buffer in subsection (i) and then sets forth in subsection (ii), in relevant part, the following limitation and exceptions governing the landowner's activities within the buffer: "Within the buffer strip there shall be no . . . earth disturbing activity conducted, except as may be reasonably necessary for . . . (c) removal of individual trees presenting a danger to persons or property and removal of diseased, dead or invasive trees, shrubs or plants . . . or (d) creation and maintenance of foot or horse trails with unimproved surfaces." This provision contains no requirement that the landowner give notice to and/or receive permission from LTV regarding the excepted activities.

MA represented to the trial court that it intended to present evidence, consistent with Article II, Section 3(ii), which would show that its earth disturbing activity within the buffer was reasonably necessary for the removal of dead and diseased trees, many of which had fallen across the Indian Spring Trail and blocked its passage; and that MA had removed only dead and diseased trees within the buffer. This evidence would conflict with evidence LTV intended to present indicating that MA had been engaged in removing living trees from the buffer. MA also represented that its evidence would show that after completing its work along the Indian Spring Trail, the area was amenable for use as a foot or horse trail, but not for vehicular traffic as LTV contended. MA further represented that it intended to present evidence to show that the disturbed area was already a "trail" generally five to seven feet wide along its course before MA cleared it of fallen trees, and not just a "footpath" as LTV contended—which are terms not defined by the Easement. On this point, MA represented that it would present evidence that the Indian Spring Trail remains similar to other trails on the property, as well as other trails located in the region. Thus, MA argued, because the case presented genuine issues of disputed material

3

facts under what it contended was the governing provision of the Easement, Article II, Section 3(ii), LTV was not entitled to partial summary judgment on the issue of liability.[2]

The trial court, agreeing with LTV that Article II, Section 5(i) of the Easement was controlling, instead of Section 3(ii), granted LTV's motion for partial summary judgment on the issue of liability. Relying on MA's admission that it had disturbed more than 1000 square feet of earth in the buffer, the court ruled that MA had "fail[ed] to give notice and obtain approval, as required" under Section 5(i) for this activity and thus breached this provision. During a hearing on MA's motion for reconsideration, MA argued that the operative term "new opening or clearing" in Section 5(i) was plainly in reference to the creation of a new opening or clearing in the forest by the removal of standing timber, as would be accomplished by clearcutting the timber. The term would thus not apply, MA asserted, to the act of clearing the Indian Spring Trail of what it contended were only dead and diseased trees. In denying MA's motion, the court clarified that its ruling in favor of LTV was based on its interpretation of the term "clearing" in Section 5(i) to include "any earth disturbing activity that might take place." Afterwards, the court awarded damages to LTV for MA's purported breach of Section 5(i), along with an award of costs to LTV that included expert witness fees and LTV staff costs, and entered final judgment for LTV accordingly.[3]

---

[2] We note that MA also filed a motion for summary judgment at the same time LTV filed its motion, but the circuit court denied MA's motion and that ruling is not on appeal. In any event, "[t]he filing of cross-motions for summary judgment does not, in itself, resolve the question whether material facts remain genuinely in dispute." *Town of Ashland v. Ashland Inv. Co.*, 235 Va. 150, 154, 366 S.E.2d 100, 103 (1988). *See also Central Nat'l Ins. v. Virginia Farm Bureau Ins.*, 222 Va. 353, 356, 282 S.E.2d 4, 6 (1981) (trial court's duty to determine whether material facts "remain in dispute . . . is not obviated by cross-motions for summary judgment.").

[3] Because we reverse the trial court's award of partial summary judgment in favor of LTV and remand for further proceedings on MA's first assignment of error, we need not address

4

ANALYSIS

Under Rule 3:20, summary judgment may be granted upon all or a portion of a claim, including "the issue of liability alone." However, summary judgment "shall not be entered" unless no "material fact is genuinely in dispute" on a controlling issue or issues and the moving party is entitled to such judgment as a matter of law. *Id. See Kohn v. Marquis,* 288 Va. 142, 147, 762 S.E.2d 755, 757 (2014); *Campbell Cnty. v. Royal*, 283 Va. 4, 15, 720 S.E.2d 90, 95 (2012); *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88, 677 S.E.2d 272, 274 (2009). Thus, in an appeal of a decision awarding summary judgment, the trial court's determination that no genuinely disputed material facts exist and its application of law to the facts present issues of law subject to de novo review. *Kohn,* 288 Va. at 147, 762 S.E.2d at 757. Further, "like other contracts, we review a trial court's construction of a deed of easement de novo." *Wetlands America Trust, Inc. v. White Cloud Nine Ventures*, 291 Va. 153, 160, 782 S.E.2d 131, 135 (2016).

MA argues on appeal that the trial court erred in its construction of the Easement, which in turn led the court to erroneously find no genuinely disputed material facts existed that would preclude awarding partial summary judgment to LTV on the issue of liability. We agree.

As we recently explained in our review of a conservation easement in *Wetlands America Trust*, "[o]ur function in construing a deed is to give effect to the parties' intention as expressed by them in the words they have used," 291 Va. at 160, 782 S.E.2d at 135 (citing *Camp v. Camp*, 220 Va. 595, 597-98, 260 S.E.2d 243, 245 (1979)), and "'[w]here the language of [the] deed clearly and unambiguously expresses the intention of the parties, no rules of construction should be used to defeat that intention.'" *Id*. at 160, 782 S.E.2d at 135-36 (quoting *Swords Creek*

its second assignment of error challenging the trial court's award of costs to LTV in the form of expert witness fees and LTV staff fees.

5

*Land P'ship v. Belcher*, 288 Va. 206, 212, 762 S.E.2d 570, 572 (2014)). Furthermore, "'the whole of a deed and all its parts should be considered together' in order to determine the controlling intent." *Id*. at 161, 782 S.E.2d at 136 (quoting *CNX Gas Co. LLC v. Rasnake*, 287 Va. 163, 168, 752 S.E.2d 865, 867 (2014)). "When the deed, so construed, is plain and unambiguous, we are 'not at liberty to search for its meaning beyond the instrument itself.'" *Id*. (quoting *Virginia Elec. & Power Co. v. Northern Va. Reg'l Park Auth*., 270 Va. 309, 316, 618 S.E.2d 323, 326 (2005)). We further explained that "[a]n instrument will be deemed unambiguous if its provisions are 'capable of only one reasonable construction.'" *Id*. (quoting *Clinch Valley Physicians, Inc. v. Garcia*, 243 Va. 286, 289, 414 S.E.2d 599, 601 (1992)).

Article II, Section 5(i)

Guided by these principles, we conclude that the disputed provisions of the Easement in Article II, Sections 3(ii) and 5(i) lend themselves to only one reasonable construction.[4] We begin with the trial court's dispositive ruling that the term "clearing" under Section 5(i) includes "earth disturbing activity" regardless of any other activity. First, unlike Section 3(ii), Section 5(i) does not expressly address earth disturbing activity. It thus appears the court erroneously conflated the language in Section 3(ii) with the language in Section 5(i).

Second, the court's conclusion is contrary to the plain meaning of the term "clearing" as used in Section 5(i) in addressing restrictions on the landowner's "right to manage forested land by *selective cutting*, pruning, and planting for noncommercial purposes." (Emphasis added.) Under Section 5(i), the landowner is explicitly limited within "the forest" to creating "[n]o more than one new opening or clearing, and no new opening or clearings greater than 1,000 square feet

_____

[4] Seeing no ambiguity in the provisions of the Easement at issue, we do not apply in our construction of these provisions the interpretive directive set forth in Article V, Section 5 of the Easement to the effect that any provision of the Easement found to be ambiguous shall be liberally construed.

6

. . . unless approved in advance and in writing by Grantee." In construing a deed, we "give the words used by the parties 'their usual, ordinary, and popular meaning'" in the context in which they are being used. *Wetlands America Trust*, 291 Va. at 161, 782 S.E.2d at 136 (quoting *Squire v. Virginia Housing Dev. Auth.*, 287 Va. 507, 516, 758 S.E.2d 55, 60 (2014)). As applicable in the context of Section 5(i), "clearing" is defined as "a tract of land cleared of wood or brush." Webster's Third New International Dictionary 420 (1993). In turn, "wood" is defined as "a tract of land on which stand growing trees," *id.* at 2630, and "brush" is defined as "land covered with scrub vegetation," *id* at 286. An "opening" is defined in this context as "an area without trees." *Id.* at 1580. *See also* 3 Oxford English Dictionary 302 (1989) (defining a "clearing" as "[a] piece of land cleared for cultivation, *esp.* in the primeval forest.").

We therefore agree with MA that the term "new opening or clearing" as used in Section 5(i) means a newly created *area* that has been cleared of standing timber and/or brush, and not merely the *act* of disturbing the earth or doing so while in the act of selective cutting and/or removing dead and diseased trees from an existing clearing or opening, i.e., an existing path, trail or road (or indeed any other existing clearing or opening in the forest). Accordingly, contrary to the trial court's ruling, MA's admissions that it disturbed more than 1,000 square feet of earth within the buffer without giving prior notice to or receiving permission from LTV, without more, are in no way dispositive of LTV's claim that MA breached Section 5(i).

## Article II, Section 3(ii)

The trial court rejected MA's argument that Section 3(ii) is a stand-alone provision in governing the landowner's permitted activities within the buffer. The necessary implication in the court's ruling that Section 5(i) controls in this case is that Section 3(ii) is subject to Section 5(i). This ruling is contrary to the plain language of these provisions.

7

First, the provisions in Section 3 set the buffer apart from the rest of the 60-acre tract for treatment under the Easement, and the terms that uniquely apply to it do not apply to the rest of the property. Unlike Section 5(i), which addresses the removal of standing timber, Section 3 addresses a completely different explicit objective within the buffer, which is "[t]o protect [the] water quality" of the Little River.[5]

Second, under Section 3(ii), there are no explicit prior notice/permission requirements for the earth disturbing activities which the landowner may perform within the buffer, unlike in Section 5(i). It is only reasonable to conclude that had the parties to the Easement intended that such requirements govern Section 3(ii)'s permitted activities, the parties would have specifically made provision for them in Section 3(ii) (as they did in Article II, Sections 1, 2(ii), 5(i) and 5(ii), and Article V, 6(i) and 6(ii)). *See also, e.g., Bartolomucci v. Federal Ins. Co.*, 289 Va. 361, 370, 770 S.E.2d 451, 456 (2015) (recognizing that "[a] distinction based upon the word choice utilized in the [contract] must be recognized because 'all words used in [it] must be given effect if reasonably possible,'" and that as a result, "[d]ifferent terms given special meanings by the parties are reasonably understood to mean different things") (quoting *Barrett v. Vaughan & Co.*, 163 Va. 811, 817, 178 S.E. 64, 66 (1935)). We therefore refuse to read requirements of this nature into Section 3(ii) that were not included by the parties. *See id*. at 372 n.3, 770 S.E.2d at 457 n.4 (observing that courts "evaluate contracts based on what the instruments actually say, not on what may have been intended" but left unexpressed by the parties). *See also, e.g., Shareholder Representative Servs. v. Airbus Americas, Inc*., 292 Va. 682, 692, 791 S.E.2d 724,

---

[5] Thus, for example, Section 3(ii) provides that within the buffer there shall be "no storage of compost, manure, fertilizers, chemicals, machinery or equipment," while approving "stream bank restoration and erosion control."

8

729 (2016) ("It is the function of the court to construe the contract made by the parties, not to make a contract for them.").

Third, the scope of Section 3 (ii) exceeds the scope of Section 5(i)'s 1,000 square foot limitation for the creation of a new space or area by the removal of standing timber and/or brush (which provision, once again, does not specifically address earth disturbing activity). It becomes clear that interpreting Section 5(i)'s 1,000 square foot limitation as governing Section 3(ii)'s authorized "earth disturbing activity" within the buffer is erroneous when such an interpretation is considered in the context of the landowner's rights under Section 3(ii) to create and maintain horse trails within the buffer. Such an interpretation would mean that the landowner is allowed to construct a horse trail without prior approval so long as the trail is no longer than 167 feet where, for example, the average width of the trail is six feet. Of course, a wider trail would have to be even shorter. The footprint of such a hypothetical horse trail consisting of 1000 square feet would amount to less than one-fourth of the size of the footprint of the single-family dwelling that the landowner may construct on the property pursuant to Article II, Section 2 of the Easement (the "dwelling . . . shall not exceed 4,500 square feet in ground area or footprint") and less than one-half of the footprint of the aggregate footprint of the permitted non-residential outbuildings that may be constructed (such "outbuildings and structures shall not exceed 2,500 square feet"). It therefore strains credulity to believe that the parties to the Easement intended for the provisions of Section 5(i) to control the landowner's permitted activities within the buffer under Section 3(ii). Our presumption is always that the parties "were trying to accomplish something rational. Common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons." *Fishman v. LaSalle Nat'l Bank*, 247 F.3d 300, 302 (1st Cir. 2001) (internal citation omitted)).

9

Significantly, however, Section 3(ii) does not leave the landowner without limitations as to the amount of earth it can disturb in the process of removing dead or diseased trees or constructing and maintaining a foot or horse trail within the buffer. The landowner is always limited by what "is reasonably necessary" in conducting the permitted activities under the express terms of Section 3(ii). Here, whether MA conducted permitted activities within the buffer pursuant to Section 3(ii), and disturbed the earth only as reasonably necessary in the process, are disputed issues of material fact.

Article V, Section 2

LTV also relies heavily in this appeal, as it did below, on another provision of the Easement, Article V, Section 2, in arguing that it was entitled to partial summary judgment on the issue of liability because this provision gives LTV exclusive use of the Indian Spring Trail. LTV's reliance on this provision is misplaced. Section 2 appears in the "General Provisions" part of the Easement under Article V in the context of addressing rights of the general public to access the buffer. It states, in relevant part, that "[t]he Grantor hereby conveys to the Grantee the right to construct and maintain a primitive footpath, for pedestrian travel only, across the [buffer]. The Grantee is hereby conveyed the right to permit the public to enter into this area for non-intensive, pedestrian-based outdoor recreational activities only."[6] It then provides that the "Grantor retains the . . . non-exclusive right to access and use of the [buffer]." (Id.) LTV somehow erroneously gleans from this language that it has exclusive control over the existing

---

[6] Article 5, Section 2 is the only place in the Easement that a footpath of any kind is mentioned. Significantly, as well, the "Stewardship Document Report," which is incorporated into the Easement by reference, provides a description of the property at the time the Easement was executed and serves as an information baseline for monitoring compliance with the Easement; and it makes no mention of a footpath.

Indian Spring Trail within the buffer and thus the right to preserve it exactly as it appeared before MA conducted its buffer work.

This language is clear that what LTV, in fact, acquired under Article V, Section 2 was not exclusive control over the Indian Spring Trail but instead the future right to construct a "primitive footpath" within the buffer and then maintain it. The express language of this provision indeed necessarily negates LTV's claim of exclusivity. This provision reserves for the landowner the non-exclusive right to access and use the buffer, in addition to all of the rights within the buffer expressly reserved for the landowner in Article II, Section 3(ii), as discussed above. *See Walton v. Capital Land*, 252 Va. 324, 326-27, 477 S.E.2d 499, 501 (1996) ("If [a] conveyance limits exclusive use of all or part of the servient estate *to a particular purpose*, the conveyance is an easement and the servient landowner retains the right to use the land in ways not inconsistent with the uses granted in the easement." (citing Restatement of Property § 471, cmt. a, b, e (1944); 7 Thompson on Real Property § 60.04(b)(1)-(2) (David A. Thomas ed. 1994)); *see also McCarthy Holdings LLC v. Burgher*, 282 Va. 267, 271-72, 716 S.E.2d 461, 463-64 (2011) (quoting *Walton*). LTV is therefore manifestly wrong in asserting that the Indian Spring Trail is "the one place [on the property] that [MA] is not permitted to do any construction or maintenance work [but] is the one place [MA] chose to do it." Thus, the issue is not whether MA had a right to perform work within the buffer along the Indian Spring Trail. Rather, the issue is whether the nature of that work was in compliance with the Easement.

CONCLUSION

This case presents genuine issues of disputed material fact over whether MA breached the Easement as LTV claims, thereby precluding an award of partial summary judgment to LTV. On the record before us, the disputes center on questions involving the condition of Indian

11

Spring Trail before MA conducted its buffer work, the specific nature of the work MA performed, and the use that could be made of the Indian Spring Trail after the work was completed. Only after both sides are allowed to fully and fairly present their evidence to a factfinder can those issues be resolved through the application of the plain language of Article II, Section 3(ii) and Section 5(i), and Article V, Section 2, of the Easement as here construed. Accordingly, we reverse the final judgment of the circuit court and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*