COURT OF APPEALS OF VIRGINIA

Present:   Judges Friedman, Frucci and Senior Judge Humphreys
Argued at Fredericksburg, Virginia

UNPUBLISHED

JOSEPH KRUML

MEMORANDUM OPINION[*] BY
v.        Record No. 0518-23-4          JUDGE FRANK K. FRIEDMAN
JANUARY 7, 2025

BOOZ ALLEN HAMILTON, INC.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
John M. Tran, Judge

Nicholas Hantzes (Hantzes & Associates, on briefs), for appellant.

David L. Greenspan (Richard J. Batzler; Robert W. Loftin; John M.
Murdock; McGuireWoods LLP; Potter & Murdock, P.C., on brief),
for appellee.


Appellee Booz Allen Hamilton (BAH), prime contractor on a contract with the Office of the

Director of National Intelligence (ODNI), exercised its contractual right to direct a subcontractor,

Synertex, LLC, to remove its at-will employee, appellant Joseph Kruml, from an ODNI project.

Synertex complied and removed Kruml from the subcontract and then terminated Kruml's

employment altogether.  Kruml sued BAH, alleging it tortiously interfered with his at-will

employment contract with Synertex.  The trial court granted BAH's motion for summary judgment.

Kruml then filed a motion for reconsideration that was denied.  Kruml appeals both rulings.  The

trial court correctly applied the law on the first issue and did not abuse its discretion on the second,

so we affirm.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

I. <u>The underlying incident giving rise to Kruml's lawsuit</u>

Kruml worked as an analyst at ODNI for Synertex, which had entered into a subcontract with BAH to service the latter's prime contract with ODNI. His employment contract was at-will and began more than a year after Synertex entered into the subcontract with BAH.

Kruml alleges that in May 2021, a federal employee at ODNI subjected him to a hostile work environment by assaulting him with threatening verbal and physical acts. Kruml reported the incident to a BAH project manager. BAH, in turn, reported the allegation to ODNI's chief of staff.

Just days later, Kruml alleges that three federal employees from ODNI conspired to retaliate against him by arranging for the termination of his access to ODNI secure sites, knowing that without such access, Kruml could not perform his job duties. Kruml reported this loss of access and alleged retaliation to Synertex, which in turn reported it to BAH. Kruml alleges that BAH refused to notify ODNI of his retaliation complaint, which Kruml characterizes as a violation of government policy as well as BAH's contracts with ODNI and Synertex.

Under the subcontract with Synertex, BAH had the express contractual right to direct Synertex to remove any employee from the ODNI project.[2] BAH exercised this right and

---

[1] "[W]e review the record applying the same standard the trial court must adopt in reviewing a motion for summary judgment, accepting as true 'those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason.'" *Klaiber v. Freemason Assocs.*, 266 Va. 478, 484 (2003) (quoting *Dudas v. Glenwood Golf Club, Inc.*, 261 Va. 133, 136 (2001)).

[2] The subcontract provided in relevant part: "Prime Contractor [BAH] reserves the right to direct the removal and/or replacement of any individual assigned to this Subcontract at its sole discretion."

directed Synertex to remove Kruml from the project.[3]  Synertex complied and removed Kruml

from the ODNI project.  Later, Synertex terminated Kruml's employment altogether.

## II. The trial court proceedings

Kruml sued BAH in Fairfax Circuit Court and asserted one count of tortious interference

with a contract.  He alleged that BAH's failure to report Kruml's loss of access constituted

improper methods.  Kruml further alleged that BAH's exercise of its contractual right violated

government policies incorporated into the prime and subcontracts, thus precipitating Kruml's

termination from Synertex by improper methods.  BAH craved oyer of Kruml's employment

contract with Synertex; Kruml responded by stipulating to the fact that he had been an at-will

employee.  The parties also stipulated to the authenticity of the prime contract, the subcontract,[4]

and BAH's communication to Synertex directing Kruml's removal from the subcontract.

BAH filed a demurrer that the trial court sustained with leave for Kruml to amend.

Kruml filed an amended complaint, to which BAH filed an answer and grounds of defense.

BAH then moved for summary judgment.  The trial court heard argument on the motion on

January 6, 2023, and granted BAH summary judgment that day.  The trial court explained its

decision to grant summary judgment for BAH as follows:

> I do find that summary judgment should be granted to the
> Defendant on . . . the basis that there's no material facts in dispute
> to show that [BAH] exercised a contractual right to remove the
> Plaintiff from this assignment and had to do it because the
> government didn't give him access to. . . .  [U]nder a . . . contract
> right that they had entered into with the . . . Plaintiff's employer,
> [BAH] had the right of their discretion to remove a particular
> worker and replace that worker with someone else, and they
> exercised that right.

---

[3] Kruml alleges the "lunging" incident by an ODNI employee occurred around May 20th and that the three ODNI employees retaliated against him around June 3rd.  BAH exercised its contractual right of removal around June 11th.

[4] The subcontract was originally between BAH and VXIT Analytics.  The subcontract was then transferred to Synertex.

So I find as a . . . matter of law that [BAH] should be awarded summary judgment based on the fact that the improper methods cannot be shown in this case based upon the facts that are not in dispute and the existence of the contract that has now been made part of the record of the case, . . . as well as the request for admissions that have been made a part of the record in this case.

Kruml subsequently filed a motion for reconsideration on January 13, 2023. He proffered deposition testimony of former BAH employee Ashley Jones, who testified that "had BAH not engaged in improper means and terminated Mr. Kruml's position at ODNI, his access to the secured network would have been restored and he could have resumed his duties." But Kruml did not introduce this testimony at the summary judgment hearing "because [Jones] was deposed the afternoon on January 5, 2023 which was less than 24 hours prior to the [summary judgment] hearing." Kruml added that the deposition had not been transcribed by the time of the summary judgment hearing. Kruml also argued that he "had no reason to know the Court would rely on the fact that [Kruml] could not perform his job, which was the product of retaliation, as a basis to support entry of summary judgment."

On January 20, 2023, the trial court suspended the 21-day jurisdictional period under Rule 1:1(a). In March 2023, the trial court denied Kruml's motion to reconsider without a hearing, stating in a memorandum opinion and order that Kruml's motion "raised no substantive arguments that had not already been considered by the Court and that the offered deposition testimony of Ashley Jones does not present new evidence relevant to the Court's grant of summary judgment." The trial court also noted that "BAH exercised [an] undisputed contractual right" when it removed Kruml and that there were no facts that BAH subjected Kruml to any "discrimination, harassment, or illegal conduct." Kruml timely appealed.

ANALYSIS

Kruml presents 18 assignments of error. Many of these are duplicative or overlapping, while others are insufficient.[5] But a careful review of Kruml's pleading yields four central arguments that are both sufficiently stated and properly preserved for appellate review.

First, Kruml asserts that the "[t]rial [c]ourt erred as a matter of law in granting the Motion for Summary Judgment because, contrary to the [t]rial [c]ourt's ruling, there were disputed facts in the record consisting of the facts supporting the existence of the improper methods." Second, he argues that the "[t]rial [c]ourt erroneously ruled that the Plaintiff must show a BAH employee subjected [him] to discrimination, harassment or illegal conduct or other violation of law to prove improper methods." Third, he asserts that the "[t]rial [c]ourt erred as a matter of law in granting the Motion for Summary Judgment on the erroneous ground that BAH did not engage in improper means as a matter of law because BAH had a contractual right to remove [him] from the government contract." Finally, he assigns error to the trial court's denial of his motion to reconsider its grant of summary judgment for BAH.

I. The trial court properly granted BAH's motion for summary judgment.

The first three of Kruml's properly preserved appeal points concern whether BAH employed improper methods to secure Kruml's removal from the ODNI project, and thus indirectly, from employment with Synertex. We consider them together.

---

[5] These assignments of error merely assert that BAH "did not meet its burden," or that the evidence in the record was sufficient to establish Kruml's theory of the case. Rule 5A:20(c)(2) provides that "[a]n assignment of error . . . which merely states that the judgment or award is contrary to the law and the evidence, is not sufficient." "[I]t was the duty of [Kruml's] counsel to 'lay his finger on the error' in his [assignments of error] in the Court of Appeals." *Carroll v. Commonwealth*, 280 Va. 641, 649 (2014) (quoting *First Nat'l Bank of Richmond v. William R. Trigg Co.*, 106 Va. 327, 342 (1907)). It is not the duty of "an appellate court 'to delve into the record and winnow the chaff from the wheat.'" *Findlay v. Commonwealth*, 287 Va. 111, 116 (2014) (quoting *Loughran v. Kincheloe*, 160 Va. 292, 298 (1933)).

A. Standard of review

"Under well-settled principles, we review the record applying the same standard a trial court must adopt in reviewing a motion for summary judgment, accepting as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88 (2009). "[S]ummary judgment 'shall not be entered' unless no 'material fact is genuinely in dispute' on a controlling issue or issues and the moving party is entitled to such judgment as a matter of law." *La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 294 Va. 243, 253 (2017) (alteration in original) (quoting *Mount Aldie, LLC v. Land Tr. of Va., Inc.*, 293 Va. 190, 196 (2017)); s*ee* Rule 3:20. "Accordingly, 'in an appeal of a decision awarding summary judgment, the trial court's determination that no genuinely disputed material facts exist and its application of law to the facts present issues of law subject to de novo review.'" *Id.* (quoting *Mount Aldie*, 293 Va. at 196-97). "'[I]f the evidence is conflicting on a material point or if reasonable persons may draw different conclusions from the evidence,' then the non-moving party is entitled to proceed to a trial on the merits." *Id.* (alteration in original) (quoting *Fultz*, 278 Va. at 88).

B. Tortious interference with an at-will contract[6]

*Chaves v. Johnson*, 230 Va. 112, 120 (1985), recognized a cause of action for the tort of intentional interference with performance of a contract.

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

---

[6] Again, Kruml stipulated that he was an at-will employee at Synertex.

*Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 558 (2011) (quoting *Chaves*, 230 Va. at 120).

> The elements required for a prima facie showing of the tort are:
> (1) the existence of a valid contractual relationship or business
> expectancy; (2) knowledge of the relationship or expectancy on the
> part of the interferor; (3) intentional interference inducing or causing
> a breach or termination of the relationship or expectancy; and
> (4) resultant damage to the party whose relationship or expectancy
> has been disrupted.

*Chaves*, 230 Va. at 120.

"Unlike a party to a contract for a definite term, however, an individual's interest in a contract terminable at will is essentially only an expectancy of future economic gain, and he has no legal assurance that he will realize the expected gain." *Duggin v. Adams*, 234 Va. 221, 226 (1987). "Thus, the cause of action for interference with contractual rights provides no protection from the mere intentional interference with a contract terminable at will." *Id.* "Consequently, when a contract is *terminable at will*, a plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not only an *intentional* interference that caused the termination of the at-will contract, but also that the defendant employed '*improper* methods.'" *Id.* at 226-27; *see also Hechler Chevrolet v. General Motors Corp.*, 230 Va. 396, 402 (1985) ("The cause of action for interference with the contract rights of others stops short of redressing interference with contracts terminable at will provided no improper methods are used.").

C. <u>To state a claim for tortious interference with a contract, an at-will employee must establish improper methods and generally the valid exercise of a contractual right is not an improper method.</u>

"The fact that Virginia recognizes the existence of the tort of intentional interference with a contract does not mean that every contract relationship which is terminated or disrupted through the interference of a third party promoting its own interests will result in tort liability for that party." *Lewis-Gale Med. Ctr., LLC v. Alldredge*, 282 Va. 141, 153 (2011). "Rather, the law provides a

remedy in tort only where the plaintiff can prove that the third party's actions were illegal or fell so far outside the accepted practice of that 'rough-and-tumble world' as to constitute improper methods." *Id.* "Methods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules." *Duggin*, 234 Va. at 227. "Improper methods may include violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship." *Id.* "Methods also may be improper because they violate an established standard of a trade or profession or involve unethical conduct. Sharp dealing, overreaching, or unfair competition may also constitute improper methods." *Id.* at 228 (internal citations omitted).

"Under Virginia law, a threat to perform an act one is legally entitled to perform is not a wrongful act." *Lewis-Gale Med. Ctr.*, 282 Va. at 152. Generally, the exercise of a valid contractual right does not give rise to a claim for tortious interference with an at-will contract: "the lawful exercise of the [defendant's] statutory and contractual rights which incidentally may have interfered with the [plaintiff's] private negotiations for sale of the inventory . . . is not actionable and will not support recovery for tortious interference with contractual relations." *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 251 Va. 28, 36 (1996); *see also Priority Auto Grp., Inc. v. Ford Motor Co.*, 757 F.3d 137, 144 (4th Cir. 2014) (explaining that "the exercise of the right [claimed under a third-party contract] cannot itself be an 'improper method' of interference that would make it amenable to suit in tort"). In affirming a trial court's order sustaining a demurrer, where a law firm sued a board of supervisors for tortiously interfering with the firm's at-will contract because the board's chairman engaged in malice and ill-will and had no legal justification or legitimate business interest in terminating the contract, our Supreme Court observed that, "[Plaintiff] fails to appreciate the limited nature of what constitutes 'improper' interference in cases involving contracts

terminable at will.  We will not extend the scope of the tort to include actions solely motivated by spite, ill will and malice." *Dunn, McCormack & MacPherson*, 281 Va. at 559-60.

   D. Kruml must establish improper methods, and he incorrectly relies on the prime and subcontracts to do so.

Kruml's topline argument is that "[t]he improper methods consist of BAH's termination of Mr. Kruml from the ODNI contract in retaliation for Mr. Kruml making a retaliation claim and hostile work environment claim in violation of applicable industry and ethical standards reflected in the ODNI Anti-Harassment, Prime Contract, and subcontract provisions."  The crux of Kruml's tortious interference claim centers on the prime and subcontracts and whether BAH violated any provisions of those contracts.

Specifically, Kruml argues that BAH's prime contract with ODNI (at §§ 152.204-712, 152.222-700, and 152.242-717),[7] and its subcontract with Synertex (at §§ 152.204-712 and 152.222-700), incorporate ODNI's Anti-Harassment Policy—Office of Director of National Intelligence Instruction 120.01—and that these provisions imposed a requirement to report, within two days, instances of harassment.[8]  By failing to report to ODNI that ODNI's own employees had wrongfully deprived him of access to the systems he needed to do his job, Kruml argues that BAH violated Instruction 120.01.  Further, Kruml argues that by directing Synertex to remove him from the ODNI contract because of lack of access, BAH used improper methods to interfere with his at-will employment contract with Synertex.

---

   [7] During discovery in the trial court, Kruml cited § 152.242-717 as among the contract provisions BAH violated when it directed Synertex to remove him from the ODNI project. However, the provision actually defines the general supervisory arrangement between ODNI, BAH and Synertex, and their employees and does not address misconduct.

   [8] Office of Director of National Intelligence Instruction 120.01, *Anti-Harassment and Anti-Bullying Policy*, signed by ODNI Chief Management Officer Mark W. Ewing on February 6, 2017.  *See* https://perma.cc/U3UA-QACL.

Kruml also argues that BAH engaged in improper methods because it "became a vehicle of retaliation" and "placed its interest of maintaining ongoing and future revenue from the Prime [contract] ahead of its obligation to report Mr. Kruml's retaliation claim by pacifying the supervisors at ODNI who retaliated against Mr. Kruml . . . ."

Kruml's argument as it relates to the prime and subcontracts necessarily raises the question of whether Kruml can rely on those contracts here, given he is not party to either and has failed to argue that he is an intended beneficiary of those contracts.[9]

Regardless, Kruml mischaracterizes both the contractual provisions and the requirements of Instruction 120.01.[10] The contracts never mention Instruction 120.01. But they do refer to harassment. The prime contract provides at § 152.204-712, in pertinent part, that "[t]he Contractor shall inform its employees that [redacted] has a zero tolerance policy for harassing behavior and that it shall not be tolerated. Any Contractor employee who is found to be culpable in incidents of harassment shall be immediately escorted from the premises and denied further access." (Redaction in original). Relatedly, the subcontract provides at § 152.222-700 that the "Contractor . . . shall comply with all applicable . . . regulations and [redacted] policies and practices with respect to equal

---

[9] "The third party beneficiary doctrine is subject to the limitation that the third party must show that the parties to the contract clearly and definitely intended it to confer a benefit upon him." *Prof'l Realty Corp. v. Bender*, 216 Va. 737, 739 (1976); *see also Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 104-05 (2019) ("'An incidental beneficiary is so far removed from the obligations assumed by the contracting parties that a court will not allow him to sue on that contract,' but 'an intended beneficiary is such an integral part of the obligations assumed by the contracting parties that a court will permit him to sue on that contract.'" (quoting *Thorsen v. Richmond Soc'y for the Prevention of Cruelty to Animals*, 292 Va. 257, 273 (2016))); *Kelley v. Griffin*, 252 Va. 26, 29 (1996) (explaining that an incidental beneficiary to a contract has no standing to sue on it).

[10] We are bound neither by the findings of the trial court nor the views of the parties in construing these documents. "The circuit court's legal interpretations of a regulation are questions of law which we review *de novo*." *Davenport v. Util. Trailer Mfg. Co.*, 74 Va. App. 181, 194 (2022). And we "review[] the circuit court's interpretation of an agreement de novo." *Va. Fuel Corp. v. Lambert Coal Co.*, 291 Va. 89, 97-98 (2016).

employment opportunity and a harassment-free workplace whenever work is being performed on federal property or in performance of duties on behalf of the Government." (Redaction in original).

The gravamen of these contractual provisions, as pertaining to harassment, is to prohibit contractors from engaging in behavior and not, as Kruml argues, to impose a duty upon BAH to police the behavior of ODNI employees. And the two-day reporting period on which Kruml relies refers explicitly to Equal Employment Opportunity (EEO) policy violations, not instances of harassment.[11] Thus, neither Instruction 120.01 nor the contracts impose a duty upon BAH to report harassment *falling short* of illegal discrimination.

Moreover, Kruml, himself, was not without recourse. Instruction 120.01 states that "[a]llegations made by or against contractors . . . that occur in an ODNI facility will be addressed under this Instruction to the extent permissible by law and the individual's employer."[12] Instruction 120.01, paragraph 4. Under Instruction 120.01, "*[i]ndividuals* who are recipients of [harassing] behaviors . . . *must bring the situation to ODNI management's attention* as soon as possible." Instruction 120.01, paragraph 6(C) (emphases added). The Instruction adds that "[i]f for any reason the *individual* is uncomfortable with reporting the situation to a supervisor or manager . . . or if the *individual* perceives that someone in management is the perpetrator, the *individual* may make an official report of record with the Employee-Management Relations Officer (EMRO)." *Id.* (emphases added). Thus, Instruction 120.01—on which Kruml relies—places the onus of reporting harassment by ODNI employees on *himself*, and the burden of investigating and adjudicating his

---

[11] Instruction 120.01 itself makes clear that harassment falls outside the ambit of EEO: "[M]any adverse workplace behaviors that fall short of, or outside of, the legal definition of discrimination, may still create a toxic work environment and are prohibited by this policy. Behaviors that qualify as bullying, while not illegal discrimination, . . . damage morale and organizational cohesion, and detract from the mission." Instruction 120.01, paragraph 6(B).

[12] Nothing in the record indicates any bar to handling Kruml's harassment allegations via the procedure set forth in Instruction 120.01.

complaint on *ODNI*. Neither burden falls on BAH, either under Instruction 120.01 or under the prime or subcontracts.

Instruction 120.01 provided Kruml with a clear channel for seeking redress for the harassment he allegedly suffered at the hands of ODNI employees. Yet the record lacks any indication that he availed himself of it.[13] "Nor does [Kruml] allege that [BAH] prevented [him] from exercising [his] . . . right[]" under Instruction 120.01 to file a complaint with the ODNI EMRO.[14] *Francis v. Nat'l Accrediting Comm'n of Career Arts & Scis., Inc.*, 293 Va. 167, 174 (2017). Instead, Kruml sought—and still seeks—to shift the onus onto BAH to pursue redress on his behalf for the conduct of federal ODNI employees. But Kruml "fails to appreciate the limited nature of what constitutes 'improper' interference in cases involving contracts terminable at will," *Dunn, McCormack & MacPherson*, 281 Va. at 559-60, and we decline to extend the scope of the tort to require BAH to indemnify Kruml for the wrongful acts of a third-party over whom BAH had neither authority nor control.[15] The tort of interference with a contract does not extend that far.

---

[13] ODNI also provided a possible reporting channel via the Intelligence Community Inspector General (IC IG). The ODNI website posts an IC IG hotline with multiple modes of communication. *See* https://perma.cc/SB3H-N94M. Nothing in the record indicates that Kruml availed himself of that avenue to seek redress, either.

[14] Kruml also alleged in circuit court that BAH violated Code § 40.1-27.3, which prohibits an employer from retaliating against an employee for reporting a violation of law to a *supervisor* or government body or law enforcement official, participating in a government investigation, or testifying before a government body. But Kruml was not BAH's employee, and BAH directed his removal from the ODNI project, not because he reported the alleged misconduct by ODNI employees, but because he had lost access to ODNI systems that he needed to do his job.

[15] ODNI is not a party to this suit, so we need not determine whether the federal government employees that caused Kruml to lose access engaged in behavior that constitutes improper methods.

E. BAH did not engage in improper methods.

"[T]he law will not provide relief to every disgruntled player in the rough-and-tumble world comprising the competitive marketplace." *Lewis-Gale Med. Ctr.*, 282 Va. at 153 (quoting *Williams v. Dominion Tech. Partners, L.L.C.*, 265 Va. 280, 290 (2003)). Although tortious interference with an at-will contract is a viable cause of action in Virginia, it is subject to a number of defenses. "Justification or privilege" is one. *Duggin*, 234 Va. at 229. Another is the "lawful exercise of [the defendant's] statutory and contractual rights" which "incidentally may . . . interfere[]" with a contract. *Charles E. Brauer Co.*, 251 Va. at 36. *Cf. Lewis-Gale Med. Ctr.*, 282 Va. at 152 ("Under Virginia law, a threat to perform an act one is legally entitled to perform is not a wrongful act."). Other defenses include "legitimate business competition, financial interest, responsibility for the welfare of another, directing business policy, and the giving of requested advice." *Chaves*, 230 Va. at 121.

Kruml complains that BAH prioritized its financial interests and its business relationship with ODNI over addressing the retaliation by ODNI employees. But the affirmative defenses available reflect the public policy that where the defendant has a "contractual . . . relationship with the other party to the plaintiff's contract, a balance must 'be struck between the social desirability of protecting the business relationship [of the plaintiff and the other party], on one hand, and the interferor's freedom of action [with the other party] on the other.'" *Lewis-Gale Med. Ctr.*, 282 Va. at 152 (second and third alterations in original) (quoting *Chavez*, 230 Va. at 121).

Protecting its financial interests was not, as Kruml implies, an illegitimate consideration for BAH, or a factor of secondary importance. Defending these interests is not mere crass profiteering. Many other parties have an interest in the financial fortunes of BAH, including investors, employees, subcontractors, creditors, vendors, and customers—all of whom (unlike Kruml) are in privity of contract with BAH.

- 13 -

BAH was under contract to provide services to ODNI. BAH had delegated that duty, in part, to Synertex, who employed Kruml in that capacity. Kruml's loss of access impeded the delivery of those services to the operational detriment of ODNI and the financial detriment of BAH. BAH waited out the loss of credentials for over a week, but ultimately found it expedient to remove the impediment by exercising its contractual right to direct Synertex to relieve Kruml of his duties on the project. Given that BAH was "a financially interested party and such interest motivate[d] [its] conduct, it cannot be said that [BAH] [was] an officious or malicious intermeddler." *Zoby v. American Fid. Co.*, 242 F.2d 76, 79 (4th Cir. 1957). "This is not a case of a competitor seeking his own advantage by causing the breach of another's contract. Rather it is a case of one acting normally to limit his liability in a situation to which he is already a party." *Id.* at 80.

Kruml also argues that BAH had a duty to report the allegedly retaliatory interruption of his access to ODNI, even though ODNI's own employees were responsible for that denial of access. Kruml traces this putative duty to Instruction 120.01. But as we have seen, Instruction 120.01 imposes no such duty on BAH. Absent some requirement to the contrary, BAH "did nothing more than exercise its rights provided in" its subcontract with Synertex, entered into more than a year before Kruml formed his at-will contract relationship with them. *Charles E. Brauer Co.*, 251 Va. at 35. Without more, BAH's "choice to exercise a legal right, even if it w[ould] interfere with the plaintiff's contract interests, 'is not actionable and will not support recovery for tortious interference.'" *Frank Brunckhorst Co., L.L.C. v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 464 (E.D. Va. 2008) (quoting *Charles E. Brauer Co.*, 251 Va. at 36).

F. <u>There is no factual dispute: BAH exercised a valid contractual right.</u>[16]

Contrary to Kruml's assertions on appeal, while some tangential issues are disputed here, there are no *material facts* genuinely in dispute. *See Charles E. Brauer Co.*, 251 Va. at 30. The material facts of this case are these, and they are *not* in dispute: BAH was the prime contractor on a project for ODNI. Synertex entered into a subcontract with BAH to service the ODNI project. Under this subcontract, BAH had the right to direct Synertex to remove employees from the ODNI project. *Supra* at n.2. Kruml was an at-will Synertex employee working on the ODNI project. A conflict arose between Kruml and certain ODNI employees, which Kruml characterizes as harassment. Kruml then lost the ODNI access required to perform his duties, ostensibly at the behest of ODNI employees as retaliation for Kruml's reporting the incident of harassment. BAH directed Synertex to remove Kruml from the ODNI project. Synertex then chose not to place him in a different position but terminated his employment as well.

Long-established caselaw from our Supreme Court instructs that the trial court properly granted summary judgment. BAH's exercise of a valid contractual right to direct the removal of Kruml from the subcontract is not an improper method under the undisputed facts in this case. *See Charles E. Brauer Co.*, 251 Va. at 36 (finding that the lawful exercise of a contractual right that incidentally interferes with another is not actionable for tortious interference with contractual

---

[16] "Any party may make a motion for summary judgment at any time after the parties are at issue," and "[i]f it appears from the pleadings, the orders, if any, made at a pretrial conference, the admissions, if any, in the proceedings, that the moving party is entitled to judgment, the court shall grant the motion." Rule 3:20. "Summary judgment may not be entered," however, "if any material fact is genuinely in dispute." *Id.* "[T]he summary judgment rules . . . are not intended to substitute a new method for trial when an issue of fact exists." *Carson v. LeBlanc*, 245 Va. 135, 140 (1993). Yet when properly applied, "summary judgment 'achieves a salutary purpose.'" *AlBritton v. Commonwealth*, 299 Va. 392, 404 (2021) (quoting *Turner v. Lotts*, 244 Va. 554, 557 (1992)). By "bring[ing] litigation to an end at an early stage when it clearly appear[s] that one of the parties was entitled to a judgment in the case as made out by the pleadings and the admissions of the parties," *Carson*, 245 Va. at 140, the trial court can "sav[e] litigants from the costs of an unnecessary trial on a meritless claim," *AlBritton*, 299 Va. at 404.

relations); *Duggin*, 234 Va. at 226 ("the cause of action for interference with contractual rights provides no protection from the mere intentional interference with a contract terminable at will"). Notwithstanding Kruml's assertion that ODNI employees wrongfully obstructed his access, BAH's exercise of its contractual right to direct the removal of Kruml from the ODNI project does not rise to the level of improper methods. On this, we also find *Lewis-Gale* instructive and further supportive of the trial court's ruling.

In that case, Lewis-Gale Medical Center contracted with the medical staffing company Southwest Emergency Physicians, Inc. (SWEP) to staff the hospital's emergency department. *Lewis-Gale Med. Ctr.*, 282 Va. at 145. SWEP entered into at-will employment contracts with physicians for this purpose. *Id.* Hospital management became concerned that Dr. Alldredge, one of these physicians, was involved with a group of nurses harboring grievances against the hospital. *Id.* at 145-46. Two of the hospital's key executives met with SWEP's board and characterized Alldredge as "an 'organizational terrorist.'" *Id.* at 146. Mainly concerned that retaining Alldredge on staff "could jeopardize SWEP's contract with Lewis-Gale," which provided the bulk of its revenue, SWEP terminated Alldredge. *Id.* at 146-47, 151. Alldredge sued Lewis-Gale, "alleging tortious interference with her contract of employment with SWEP" by "threats" and "illegal interference." Lewis-Gale moved for summary judgment, and the trial court took the motion under advisement. *Id.* at 147. The jury found in favor of Alldredge, awarding her $900,000, which the trial court confirmed in its final order. *Id.* at 149.

On appeal the Supreme Court reversed, finding "that the actions of Lewis-Gale's administrators . . . which Lewis-Gale's counsel concede[d] were 'unsavory,' 'careless,' and 'harsh,'" still did not "r[ise] to the level of the 'improper methods' required to prove Lewis-Gale's actions exceeded that permissible in normal business relations in order to give rise to a cause of action in tort." *Id.* at 152. "In sum," the Court opined, "Lewis-Gale's actions . . . involving at-will

contracts did not rise as a matter of law to the level of the 'improper methods' required for Dr. Alldredge to prove that Lewis-Gale's purposeful interference in her contract relationship with SWEP was tortious," and "the circuit court erred in . . . not granting summary judgment to Lewis-Gale." *Id.* at 153.

Just as SWEP's decision to terminate Dr. Alldredge to protect its relationship with Lewis-Gale did not expose Lewis-Gale to liability for tortious interference with a contract notwithstanding its "'unsavory,' 'careless,' and 'harsh'" conduct, neither does BAH's decision to direct Kruml's removal from the ODNI contract expose BAH to liability, notwithstanding the abusive and retaliatory conduct by ODNI employees that allegedly precipitated Kruml's removal. *Id.* at 152. In *Lewis-Gale* the Supreme Court determined that the trial court had erred in not granting summary judgment to the hospital. The facts in Kruml's case are analogous and dictate a similar result. We have no trouble concluding that, under the circumstances of this case, BAH's exercise of its valid contractual right does not give rise to a tortious interference claim here. Thus, the trial court did not err in granting BAH's motion for summary judgment.

## II. The trial court did not err by denying Kruml's motion to reconsider.

### A. Standard of review

"Motions to reopen an evidentiary record or to reconsider a prior ruling involve matters wholly in the discretion of the trial court." *Thomas v. Commonwealth*, 62 Va. App. 104, 109 (2013). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

### B. The trial court did not abuse its discretion.

One week after the trial court granted BAH's motion for summary judgment, Kruml filed a motion for reconsideration. Kruml argued that, even though BAH had a contractual right to direct

his removal from the ODNI project, his termination was still unjustified because he "could not perform his duties after he was disconnected from access to the secured network at ODNI" and his lack of access was an "act of retaliation by . . . ODNI supervisors . . . [who] removed Mr. Kruml's access so he could not perform his job." Kruml further asserted that BAH needed to report the alleged retaliation by ODNI employees to ODNI, and BAH's decision to direct Kruml's removal was tantamount to "joining with and perpetuating [ODNI's] retaliatory conduct."

In support of his motion, Kruml proffered deposition testimony of former BAH employee, Ashley Jones.[17] Jones was a BAH senior associate working on an ODNI contract at the time Kruml's system access was interrupted. Jones testified that Kruml's access would, at some point, have been restored. Jones added that "[i]f [ODNI employees] deliberately unaffiliated and deactivated Mr. Kruml's accounts because he reported an incident" then that would have been "improper."

The trial court denied Kruml's motion without a hearing two months later, finding that it "raised no substantive arguments that had not already been considered by the Court." The trial court further observed that Kruml did not "assert that any BAH employee subjected him to discrimination, harassment, or illegal conduct" or offer any evidence to show that BAH used improper methods by terminating Mr. Kruml, and that the deposition testimony of Ashley Jones neither "add[ed] any such evidence" nor "challenge[d] the legal basis on which the Court granted summary judgment."

The hearing on BAH's motion for summary judgment occurred on January 6, 2023. By Kruml's own admission, Ms. Jones was deposed the previous day, on January 5, 2023. Yet Kruml

---

[17] "Under Rule 3:20 and Code § 8.01-420 discovery depositions cannot be used to support a motion for summary judgment unless the parties agree. The Rule and statute do not apply to the use of depositions to oppose a motion for summary judgment." *Lloyd v. Kime*, 275 Va. 98, 107 (2008).

did not raise this testimony at the summary judgment hearing. Introducing Jones' testimony for the first time in his motion for reconsideration, Kruml argued that Jones' testimony "was not available [at argument on BAH's summary judgment motion] because she was deposed . . . less than 24 hours prior to the hearing [and] the deposition was not transcribed" and that he "had no reason to know the Court would rely on the fact that [Kruml] could not perform his job . . . as a basis to support entry of summary judgment." It was within the trial court's discretion to reject these explanations. The record does not reflect that Kruml made any effort even to inform the trial court of the existence of Jones' testimony and its import at the time of the hearing, or that he sought a continuance or any other opportunity to incorporate Jones' testimony into his argument before the trial court entered its order.

We also agree with the trial court that Jones' testimony was not material to the relevant issues.[18] For instance, Jones' testimony had no relevance to the key, undisputed fact that BAH exercised a valid contractual right to direct Kruml's removal from the project. Further, Jones' testimony was entirely speculative to the extent she testified that in the future, at some point, beyond BAH's control, Kruml's access would be reinstated. She did not suggest when this might happen or how much longer BAH might be required to wait. There is no dispute that BAH already waited over a week during which time Kruml could not perform his job duties before exercising its contractual right to request Kruml's removal. "'[T]ime is money' in the eye of the law, as well as in the estimation of the sage." *Clopton's Adm'r v. Morris*, 33 Va. 278, 297 (1835). Ultimately, Jones' testimony—even if taken as true—did not change the principle that BAH had the right to determine for itself whether the delay in restoring Kruml's access posed an unacceptable business risk, and it had the "freedom of action" to act on that decision, even to

---

[18] The term "material evidence" is defined as "[e]vidence having some logical connection with the facts of the case or the legal issues presented." *Material Evidence*, *Black's Law Dictionary* (12th ed. 2024).

Kruml's detriment. *Chaves*, 230 Va. at 121. Under these circumstances, we hold that the trial court did not abuse its discretion when it denied Kruml's motion for reconsideration.

CONCLUSION

We hold that the trial court properly granted BAH's motion for summary judgment. BAH's exercise of a valid contractual right, under these facts, is not an improper method giving rise to a claim for tortious interference with an at-will employment contract. We also hold that the trial court did not err in denying Kruml's motion for reconsideration. Thus, we affirm.

*Affirmed.*